No. 23-3740

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

JOHN AND JANE DOE NO. 1, ET AL.,

*Plaintiffs-Appellants,*

v.

BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.,

*Defendants-Appellees.*

On appeal from the United States District Court
for the Southern District of Ohio
No. 3:22-cv-337

## *Amicus Curiae* Brief for the State of Tennessee
## and the Commonwealth of Kentucky

Russell Coleman
  *Attorney General*

Matthew F. Kuhn
  *Solicitor General*

Kentucky Attorney
General's Office
700 Capital Avenue, Suite 118
Frankfort, KY 40601
Matt.Kuhn@ky.gov
(502) 696-5478
  *Counsel for the Commonwealth
  of Kentucky*

Jonathan Skrmetti
  *Attorney General & Reporter*

Andrée Sophia Blumstein
  *Solicitor General*

Gabriel Krimm
  *Assistant Solicitor General*

State of Tennessee
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
Gabriel.Krimm@ag.tn.gov
(615) 532-5596
  *Counsel for the State
  of Tennessee*

# TABLE OF CONTENTS

Table of Authorities ...............................................................iii

Interest of *Amici Curiae* ............................................... 1

Introduction ................................................................. 2

Argument ..................................................................... 4

I.    Title IX does not compel the Board's policy. .................... 4

II.   This Court's decision in *Dodds v. U.S. Department of Education*, 845 F.3d 217 (6th Cir. 2016), does not hold otherwise. ..................... 9

III.  No Supreme Court precedent or persuasive circuit authority holds that sex-separated bathrooms violate Title IX...................... 15

Conclusion................................................................... 19

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

Page(s)

## Cases

*A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville,*
  75 F.4th 760 (7th Cir. 2023) ................................................................ 18

*Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.,*
  57 F.4th 791 (11th Cir. 2022) ...................................... *passim*

*Bostock v. Clayton Cnty.,*
  590 U.S. 644 (2020) ........................................... 3, 13, 15, 16

*Brannum v. Overton Cnty. Sch. Bd.,*
  516 F.3d 489 (6th Cir. 2008) ............................................. 14

*Brown v. Bd. of Ed.,*
  347 U.S. 483 (1954) ............................................................ 14

*Cannon v. Univ. of Chi.,*
  441 U.S. 677 (1979) .............................................................. 8

*Charvat v. GVN Mich., Inc.,*
  561 F.3d 623 (6th Cir. 2009) ............................................... 7

*Cookish v. Powell,*
  945 F.2d 441 (1st Cir. 1991) ............................................. 14

*D.H. ex rel. A.H. v. Williamson Cnty. Bd. of Educ.,*
  638 F. Supp. 3d 821 (M.D. Tenn. 2022) ............................... 6

*Dodds v. U.S. Dep't of Educ.,*
  845 F.3d 217 (6th Cir. 2016) ...................................... *passim*

*Doe ex rel. Doe v. Boyertown Area Sch. Dist.,*
  897 F.3d 518 (3d Cir. 2018) .................................... 3, 16, 17

*Doe v. Luzerne Cnty.,*
  660 F.3d 169 (3d Cir. 2011) ............................................. 14

iii

*Doe v. Oberlin Coll.*,
    963 F.3d 580 (6th Cir. 2020) .................................................................. 13

*Dubin v. United States*,
    599 U.S. 110 (2023) .............................................................................. 4

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018) .............................................................................. 4

*Faulkner v. Jones*,
    10 F.3d 226 (4th Cir. 1993) .................................................................. 14

*Fortner v. Thomas*,
    983 F.2d 1024 (11th Cir. 1993) ........................................................... 14

*Frontiero v. Richardson*,
    411 U.S. 677 (1973) .............................................................................. 8

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    972 F.3d 586 (4th Cir. 2020) ........................................................ *passim*

*Johnson v. Bauman*,
    27 F.4th 384 (6th Cir. 2022) ................................................................. 4

*L.W. ex rel. Williams v. Skrmetti* (*Williams I*),
    73 F.4th 408 (6th Cir. 2023) ........................................................... 11, 12

*L.W. ex rel. Williams v. Skrmetti* (*Williams, II*)
    83 F.4th 460 (6th Cir. 2023) ........................................................... 10, 14

*Meriwether v. Hartop*,
    992 F.3d 492 (6th Cir. 2021) .................................................... 12, 13, 15

*Nemir v. Mitsubishi Motors Corp.*,
    381 F.3d 540 (6th Cir. 2004) ......................................................... 10, 11

*Nken v. Holder*,
    556 U.S. 418 (2009) ....................................................................... 9, 10

*Nordlinger v. Hahn*,
    505 U.S. 1 (1992) ......................................................................... 15, 16

*Ohio v. Becerra*,
   87 F.4th 759 (6th Cir. 2023) ................................................................. 11

*Parents for Priv. v. Barr*,
   949 F.3d 1210 (9th Cir. 2020) ................................................... 3, 16, 17

*Parker v. Franklin Cnty. Cmty. Sch. Corp.*,
   667 F.3d 910 (7th Cir. 2012) ................................................................. 13

*Pelcha v. MW Bancorp, Inc.*,
   988 F.3d 318 (6th Cir. 2021) ......................................................... 15, 16

*Peltier v. Charter Day Sch., Inc.*,
   37 F.4th 104 (4th Cir. 2022) ......................................................... 13, 14

*Perrin v. United States*,
   444 U.S. 37 (1979) ....................................................................................... 5

*Pugin v. Garland*,
   599 U.S. 600 (2023) ................................................................................... 4

*Reform Am. v. City of Detroit*,
   37 F.4th 1138 (6th Cir. 2022) ............................................................. 15

*Rinard v. Luoma*,
   440 F.3d 361 (6th Cir. 2006) ......................................................... 10, 11

*Smith v. City of Salem*,
   378 F.3d 566 (6th Cir. 2004) ................................................... 10, 12, 13

*Users, Inc. v. Griepentrog*,
   945 F.2d 150 (6th Cir. 1991) ............................................................... 11

*Whitaker ex rel. Whitaker v. Kenosha Unified
   Sch. Dist. No. 1 Bd. of Educ.*,
   858 F.3d 1034 (7th Cir. 2017) ................................................... 2, 17, 18

*Wis. Cent. Ltd. v. United States*,
   138 S. Ct. 2067 (2018) .............................................................................. 5

*Yellow Springs Exempted Vill. Sch. Dist. v. Ohio*
  *High Sch. Athletic Ass'n*,
  647 F.2d 651 (6th Cir. 1981) ................................................................. 8

## Statutes

Pub. L. No. 92-318, tit. IX, 86 Stat. 373 (1972) ......................................... 4

## Code Provisions

20 U.S.C. § 1681 ................................................................... *passim*

20 U.S.C. § 1686 ............................................................................. 5, 9

42 U.S.C. § 2000e-2(a)(1) ................................................................. 16

## Rulemaking Publications

HEW, *Nondiscrimination on Basis of Sex*,
  40 Fed. Reg. 24,127 (June 4, 1975) ..................................................... 7

## Regulations

34 C.F.R. § 106.2(g) ........................................................................ 1

34 C.F.R. § 106.33 ........................................................................... 7

## Other Authorities

Sudai, Maayan, *Toward A Functional Analysis of "Sex" in Federal
  Antidiscrimination Law*,
  42 Harv. J. L. & Gender 421 (2019) ..................................................... 2

## INTEREST OF *AMICI CURIAE*

The State of Tennessee and the Commonwealth of Kentucky submit this brief as *amici curiae* in support of the Plaintiff Parents and Students on the issue of Title IX's meaning.  For more than half a century, Title IX has created countless opportunities for women and girls by prohibiting discrimination "on the basis of sex" in "any education program or activity" receiving "[f]ederal financial assistance."  20 U.S.C. § 1681(a).  As currently amended and construed, that broad prohibition reaches "all the operations" of nearly every school in the country.  *Id.* § 1687; *see* 34 C.F.R. § 106.2(g).  This includes thousands of schools in Tennessee and Kentucky, giving the *Amici* States a stake in how this Court reads Title IX.

Although the *Amici* States share all parties' interest in providing discrimination-free education, they disagree with the Bethel School Board's reading of Title IX, which gave rise to the bathroom policy that prompted this lawsuit.  The *Amici* States thus submit this brief to explain what Title IX actually says about bathrooms.

## INTRODUCTION

Good legal advice is hard to come by, especially on the subject of Title IX.  Once considered a pillar of sexual equality, that statute has recently been twisted to serve a host of new and novel agendas.  *See, e.g.*, Maayan Sudai, *Toward A Functional Analysis of "Sex" in Federal Anti-discrimination Law*, 42 Harv. J. L. & Gender 421, 433 (2019).  The government acts and lawsuits filed to push those agendas have in time spawned a morass of opaque analyses.  *See, e.g.*, *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1048–50 (7th Cir. 2017), *abrogation on other grounds recognized by Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020); *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 616–19 (4th Cir. 2020).  In attempting to navigate that morass, the Bethel School Board made a mistake.

When a male transgender student asked to use the girls' bathrooms at school, the Board aimed to limit the School District's exposure to Title IX liability.  *See* Board Meeting Minutes, R.17-2 at 594.[1]  Understandably, the Board wanted to comply with federal law, *see* Mansfield Decl., R.18-3 at 636, while also avoiding any risky and "cost[ly]" litigation,

---

[1] Record pincites refer to the district court's "PageID" numbers.

Board Meeting Minutes, R.17-2 at 594. It thus sought legal counsel and was advised that "transgender students may use the restroom that aligns with their [identity]." *Id.* at 593.

That conclusion was based on a determination that this Court had already settled the question, as had panels of "[s]everal" sister circuits, "includ[ing] the Third . . . and . . . the Ninth." *Id.* (apparently referencing *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217 (6th Cir. 2016) (per curiam), *Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018), and *Parents for Priv. v. Barr*, 949 F.3d 1210 (9th Cir. 2020)). In addition, the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020), was viewed as "significant[ly] impact[ing]" transgender "bathroom issues" moving forward, Board Meeting Minutes, R.17-2 at 594, with the apparent upshot being that Title IX tied the Board's hands.

Acting on this review, the Board announced that a "change [had to] be made." *Id.* at 594. "[T]ransgender students" would have to be granted "access to the restrooms . . . of their" choosing. *Id.* at 593. That conclusion, however, misreads the governing law. As demonstrated below, Title IX does not compel the School District's policy.

3

## ARGUMENT

Title IX does not require schools to allow male students to use female restrooms.  The statute's text, context clues, and reason for existing all point emphatically away from that construction.  And this Court's decision in *Dodds v. U.S. Department of Education*, 845 F.3d 217 (6th Cir. 2016) (per curiam), never settled the transgender "bathroom issue[]," Board Meeting Minutes, R.17-2 at 594.  In fact, no binding or persuasive case can cogently support the Board's decision.

## I.    Title IX does not compel the Board's policy.

When pressed to determine the meaning of a statute passed by Congress, this Court looks to "the key terms" and reads them in "'context'" with an eye toward their evident aims.  *Dubin v. United States*, 599 U.S. 110, 120 (2023) (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 523 (2018)); *see Pugin v. Garland*, 599 U.S. 600, 607 (2023).  When that process is applied to Title IX, the law unambiguously allows schools to deny bathroom access based on gender identity.

This Court's analysis should "begin" — and could well end — "with [Title IX's plain] text."  *Johnson v. Bauman*, 27 F.4th 384, 388 (6th Cir. 2022).  The pertinent language has not changed since first enacted in 1972.  *See* Pub. L. No. 92-318, tit. IX, 86 Stat. 373 (1972).  The statute

generally prohibits discrimination "on the basis of sex" and "sex" alone. 20 U.S.C. § 1681(a). It then flags examples of "sex"-based discrimination to which the general rule does not apply. *See id.* § 1681(a)(1)–(9). Finally, and most pertinent here, the statute clarifies in a standalone section that discrimination "on the basis of sex" does not include "maintaining separate living facilities for the different sexes." 20 U.S.C. § 1686.

This language leaves no room for doubt that schools can prohibit bathroom access based on "identity." Board Meeting Minutes, R.17-2 at 594. This Court must interpret the statutory "words consistent with their 'ordinary meaning . . . at the time Congress'" used them. *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). And in 1972, "sex" was ordinarily used as a reference to physical attributes only. *See Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.,* 57 F.4th 791, 812–13 (11th Cir. 2022) (en banc). "[V]irtually every [contemporaneous] dictionary" described "sex" as a "physiological distinction[]" that separates "males [from] females," *Grimm*, 972 F.3d at 632 (Niemeyer, J., dissenting) (emphasis omitted), based on "the structure and function of . . . reproductive organs," *Sex*, Oxford English Dictionary (1961); *see Sex*, Webster's Third New

5

International Dictionary (1971); *see also Sex*, The Random House College Dictionary (rev. ed. 1973) (similar definition); *Sex*, The American College Dictionary (1970) (similar definition).

By contrast, there is no linguistic support for reading "sex" to include "gender identity," which denotes an "inner sense of being . . . mascul[e] or femini[ne]," *D.H. ex rel. A.H. v. Williamson Cnty. Bd. of Educ.*, 638 F. Supp. 3d 821, 826 (M.D. Tenn. 2022), and is subject to "fluidity" over time, *Adams*, 57 F.4th at 803 n.6.  In fact, it is passing strange to suggest that Congress said anything about "gender identity" in Title IX, as that concept "did not exist" in 1972 "outside of some esoteric psychological publications."  R. Anderson, Ph.D, & M. Wood, *Gender Identity Policies in Schools: What Congress, the Courts, and the Trump Administration Should Do* (Heritage Found. Backgrounder No. 3201, 2017).[2]

Context clues scattered throughout the law also support the biology-based construction.  From its initial passage, the law has treated "sex" as a binary, referencing "students of one sex" and "the other."  20 U.S.C. § 1681(a)(8).  And it implies that binary is biological by contrasting "father[s and ]son[s]" with "mother[s and ]daughter[s]."  *Id*.  In

---

[2] https://www.heritage.org/sites/default/files/2017-03/BG3201.pdf

the same vein, the law refers to single-sex organizations like the "Girl Scouts" and "Boy Scouts," *id.* § 1681(a)(6)(B), as well as admissions policies at schools "traditionally" operated on a single-sex basis, *id.* § 1681(a)(5). The text even anticipates "'beauty' pageants" judging "individuals of one sex" by physical "appearance." *Id.* § 1681(a)(9). These provisions shout, over and over, that "sex" is a physical attribute.

More contextual evidence can be found in the historical record surrounding the law, which confirms *both* that "sex" is a biological matter *and* that it is a proper basis for separating bathrooms. Senate sponsor Birch Bayh said that the law "permit[ted] differential treatment by sex" specifically in areas where doing so would protect "personal privacy." 118 Cong. Rec. 5,807 (1972).[3] And the "relevant regulation[s]" soon codified and "confirm[ed]" that view, *Charvat v. GVN Mich., Inc.*, 561 F.3d 623, 632 (6th Cir. 2009), allowing "[comparable] toilet . . . facilities" to be separated by "sex." HEW, *Nondiscrimination on Basis of Sex*, 40 Fed. Reg. 24,127, 24,141 (June 4, 1975) (now codified at 34 C.F.R. § 106.33). Contemporary judges also used the term "sex" to invoke the "visib[le] . . .

---

[3] Bound volumes of the Congressional Record are available electronically at https://www.govinfo.gov/app/collection/crecb.

characteristic[s]" separating males from females. *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973) (plurality opinion). And they described Title IX as being passed to eliminate "corrosive and unjustified discrimination" occurring on that specific basis. 118 Cong. Rec. 5,803 (1972) (remarks of sponsoring Senator Bayh); *see Cannon v. Univ. of Chi.*, 441 U.S. 677, 694 n.16 (1979); *Adams*, 57 F.4th at 811.

In fact, the statute sprang from a series of congressional hearings "on 'Discrimination Against Women'" in society, *Cannon*, 441 U.S. at 694 n.16, which found such discrimination "overt and socially acceptable within the academic community" of the time. 118 Cong. Rec. 5,803 (1972) (remarks of sponsoring Senator Bayh). Title IX thus directly "respond[ed] to criticism that certain federally funded [education] programs were" deliberately excluding women. *Cannon*, 441 U.S. at 694 n.16. And the bill's authors provided a solution: deprive such programs funding collected from female taxpayers. 117 Cong. Rec. 39,252 (1971) (remarks of sponsoring Representative Mink). To read the law fifty years later as conferring a benefit on males who *identify* as women would turn the project of checking "male dominance" on its head. *Yellow Springs Exempted*

8

*Vill. Sch. Dist. v. Ohio High Sch. Athletic Ass'n*, 647 F.2d 651, 658 (6th Cir. 1981); *see Adams*, 57 F.4th at 813.

Considering the text and context clues above, the takeaway from Title IX could not be clearer. Schools can separate bathrooms by "sex," providing one set "for" males and a "separate" set "for" females. 20 U.S.C. § 1686; *see Adams*, 57 F.4th at 815.

## II. This Court's decision in *Dodds v. U.S. Department of Education*, 845 F.3d 217 (6th Cir. 2016), does not hold otherwise.

*Dodds v. U.S. Department of Education*, 845 F.3d 217 (6th Cir. 2016) (per curiam), does not conflict with the analysis above or compel the School Board's policy. For several critical reasons, *Dodds* offers no guidance on what Title IX actually means.

*First*, the *Dodds* analysis does not grapple with the relevant interpretive questions. Although *Dodds* was a Title IX case, it came to this Court in an emergency posture, prompting a brief per curiam opinion declining to stay a preliminary injunction. *See id.* at 220–22. The motions panel emphasized that "[a] stay is an intrusion into the ordinary process[] of . . . review." *Id.* at 220 (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). And in denying relief, the Court did not discuss — or even reference — Title IX's text. *See id.* at 221–22.

9

Instead, the Court focused mainly on balancing the equities, which it viewed as particularly stark. *See id.* The ultimate goal, repeated for emphasis, was to protect "a vulnerable eleven year old with special needs." *Id.* at 221. In fact, the student in question had made "multiple suicide attempts" before getting preliminary relief, *id.*, so this Court was especially reluctant to peel relief back on expedited review.

Regarding the likelihood that the school district would ultimately succeed in securing a reversal, the *Dodds* court said nothing more than that "[s]ex stereotyping based on . . . gender non-conformi[ty] . . . is impermissible." *Id.* (quoting *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004)). While that is true as far as it goes, especially in Title VII suits like *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), the Court never explained how the principle applied in *Dodds* — through Title IX or any other law, *see Dodds*, 845 F.3d at 221; *see also L.W. ex rel. Williams v. Skrmetti* (*Williams II*), 83 F.4th 460, 485–86 (6th Cir. 2023) (discussing the limits of the proposition and *Smith*'s reach).

The meaning of Title IX's text thus does no more than "lurk in [*Dodds*'s] record." *Rinard v. Luoma*, 440 F.3d 361, 363 (6th Cir. 2006) (quoting *Nemir v. Mitsubishi Motors Corp.*, 381 F.3d 540, 559 (6th Cir.

10

2004)).  It was not addressed in *Dodds* in any way that would "constitute precedent[]." *Id.* (quoting *Nemir*, 381 F.3d at 559).

*Second*, whatever *Dodds* does say about Title IX must be taken in light of the surrounding circumstances.  Importantly, the issue in *Dodds* was not whether either side was misreading the statute.  The only issue even implicating the merits was how the school district might fare "on appeal." *Dodds*, 845 F.3d at 220 (citing *Mich. Coal. of Radioactive Mat. Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)).  That issue depended on whether the court below abused its discretion.  *Ohio v. Becerra*, 87 F.4th 759, 768 (6th Cir. 2023).  And *that* issue depended on whether the Title IX claim raised "serious questions." *Dodds*, 845 F.3d at 221 (quoting *Griepentrog*, 945 F.2d at 153).

With such a highly glossed framework for commenting on Title IX's meaning, *Dodds* can only reflect an "initial view[point]," which must be treated as "just that: initial." *L.W. ex rel. Williams v. Skrmetti* (*Williams I*), 73 F.4th 408, 422 (6th Cir. 2023).  This Court has acknowledged that it "may" get things "wrong" when asked to grant an emergency stay, *id.*, and that prospect can only be heightened when the Court deals with novel, newly percolating questions.  It thus could well be that *Dodds*

11

simply contains some "mistakes." *Id.* And that is all the more reason to give Title IX a thorough construction from first principles.

*The final point* on *Dodds* is that it cites only *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004), as binding precedent on the merits, *see Dodds*, 845 F.3d at 221. But the *Smith* decision deals with Title VII, not Title IX, *see* 378 F.3d at 567–68, and the *Smith* plaintiff sued for being suspended, not assigned to a particular restroom, *see id.* at 569. Thus, although *Smith* may well stand for the proposition that "[s]ex stereotyping" violates Title VII, *Dodds*, 845 F.3d at 221 (quoting *Smith*, 378 F.3d at 575), it cannot be stretched to eliminate sex-separated school bathrooms under Title IX.

That is first and foremost because Title VII is not Title IX, and in fact the two statutes "differ[] . . . in important respects." *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021). Those differences have prompted this Court to clarify a critical point after *Dodds*: "principles announced in the Title VII context" "do[] not . . . automatically apply" to Title IX cases. *Id.* To be clear, the *Dodds* court never held otherwise; it just did some quick reasoning by analogy. *See Dodds*, 845 F.3d at 221.

But the analogy did not account for Title IX's clear rule on "living facilities." *Meriwether*, 992 F.3d at 510 n.4 (quoting 20 U.S.C. § 1686).

Nor did the *Dodds* court address the factual distinctions between the case before it and *Smith*, which have become more apparent as the "bathroom issues" have garnered more focus.  Board Meeting Minutes, R.17-2 at 594.  Unlike *Smith* and other Title VII cases, where an employee gets suspended, *see Smith*, 378 F.3d at 569, or even gets fired, *see Bostock*, 590 U.S. at 653, the fact pattern in *Dodds* and other school bathroom cases generally does not concern "discrimination" in the first place, 20 U.S.C. § 1681(a).

Courts agree that "the term 'discrimination'" in Title IX "'means treating [an] individual worse than others . . . similarly situated.'" *Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 129–30 (4th Cir. 2022) (quoting *Grimm*, 972 F.3d at 616).  This naturally includes limiting female athletes' gym access, *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 913 (7th Cir. 2012), or taking biased disciplinary action against men, *Doe v. Oberlin Coll.*, 963 F.3d 580, 586 (6th Cir. 2020).  But when it comes to transgender students using opposite-sex bathrooms, the fact pattern does not fit the law for at least two fundamental reasons.

13

To begin, sex-segregated bathrooms do not "treat[]" the members of one sex "worse than [the] other[]." *Peltier*, 37 F.4th at 130 (quoting *Grimm*, 972 F.3d at 616). Rather, they provide accommodations of relatively equal quality to "all [students], regardless of sex." *Williams II*, 83 F.4th at 480. And this is not a situation where separation marks one group as inferior to the other, *see Brown v. Bd. of Ed.*, 347 U.S. 483, 495 (1954); instead, it is a way to give both groups safety and privacy while performing "intimate, personal activity," *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008); *see Faulkner v. Jones*, 10 F.3d 226, 232 (4th Cir. 1993); *see also Doe v. Luzerne Cnty.*, 660 F.3d 169, 176–77 (3d Cir. 2011) (recognizing an interest in avoiding exposure to members of the opposite sex); *Fortner v. Thomas*, 983 F.2d 1024, 1030 (11th Cir. 1993) (same); *Cookish v. Powell*, 945 F.2d 441, 446 (1st Cir. 1991) (same).

That fact gives rise to a related point undermining claims of "discrimination": transgender men are not "similarly situated" to males, and transgender women are not "similarly situated" to females. *Peltier*, 37 F.4th at 130 (quoting *Grimm*, 972 F.3d at 616). By definition, males and females have different body parts that affect how they use the bathroom. They also differ in what they have to keep private, what they wish to keep

14

private, and from whom. These "anatomical differences are at the root of why communal restrooms are generally [sex-]separated." *Grimm*, 972 F.3d at 636 (Niemeyer, J., dissenting). And they defeat any claim that a male identifying as a woman is "[]like [a]" female "'in all relevant respects.'" *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1152 (6th Cir. 2022) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

*Dodds* does not address the abovementioned issues; it does not even note that either party raised or argued them. That makes *Dodds* a weak and narrow precedent. It offers no binding guidance on Title IX's terms.

## III. No Supreme Court precedent or persuasive circuit authority holds that sex-separated bathrooms violate Title IX.

The advice received by the School Board also referenced inapplicable and nonbinding case law. Yet neither *Bostock* nor the weight of sister-circuit precedent should sway this Court from the analysis above.

To be sure, *Bostock* binds this Court, *see Meriwether*, 992 F.3d at 506, but it does not "significant[ly] impact" bathroom policy, Board Meeting Minutes, R.17-2 at 594. On the contrary, *Bostock* makes clear it does not "address bathrooms . . . or anything . . . of the kind." 590 U.S. at 681. This Court has also read *Bostock* to implicate "only" the meaning of "Title VII." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021). And

that makes sense, given *Bostock*'s "narrow" focus, *id.*, on an employee "fired" for being "transgender," *Bostock*, 590 U.S. at 665.

Thus, the *Bostock* Court's determination that this was "unlawful discrimination on the basis of sex," *id.* at 654 (citing 42 U.S.C. § 2000e-2(a)(1)), rests on facts and governing text not presented in this case and other Title IX lawsuits, *see supra* at 12–14; *Adams*, 57 F.4th at 808–09. The fact is that nothing from *Bostock* can "impact" school bathrooms, "significant[ly]" or otherwise, Board Meeting Minutes, R.17-2 at 594, and its overreading tainted the legal advice provided to the School Board.

That advice also misplaced reliance on out-of-circuit precedent. *See id.* at 593. Although the record does not specifically name cases, *see id.*, no persuasive case supports the Board's chosen policy.

By flagging decisions from the Third and Ninth Circuits, *id.*, the Board's counsel was likely referring to *Doe ex rel. Doe v. Boyertown Area School District*, 897 F.3d 518 (3d Cir. 2018), and *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020). The trouble with *Boyertown* and *Barr* is they address an entirely different theory: the contention that Title IX and the Due Process Clause grant students a *right* to single-sex bathrooms. *See Barr*, 949 F.3d at 1217, 1225*; Boyertown*, 897 F.3d at 532.

16

The determination that no such right exists does not answer the inverse question; Title IX can "permi[t]" single-sex bathrooms even if federal law does not "require" them. *Boyertown*, 897 F.3d at 533; *see also Barr*, 949 F.3d at 1227 (same).

More on-point precedent has sprung up in several other circuits. *See Adams*, 57 F.4th 791 (11th Cir.); *Grimm*, 972 F.3d 586 (4th Cir.); *Whitaker*, 858 F.3d 1034 (7th Cir.). But that precedent does not support the Board 's decision — the only persuasive opinion cuts against it.

Addressing the precise question at issue in *Adams ex rel. Kasper v. School Board of St. Johns County*, the Eleventh Circuit sitting en banc held that "Title IX allows . . . [sex-]separate[d] bathrooms," 57 F.4th at 817. That is, "sex" means "biological sex," as is clear from Title IX's plain terms. *See id.* at 812–14. And although the statute prohibits sex discrimination, it "includes [an] express . . . carve-out[] for . . . bathroom[s]." *Id.* at 811; *see id.* at 814–15. Those two simple premises compel but one obvious conclusion: "direct[ing]" a male "to use the []male bathrooms is consistent with Title IX's precepts." *Id.* at 815.

Although appeals panels in several other circuits have come out the other way on this same question, none of their reasoning is as thorough

17

or as faithful to the statute as *Adams*. For instance, the Seventh Circuit has held that "sex" in Title IX does not mean "biological sex." *A.C. ex rel. M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 770 (7th Cir. 2023) (citing *Whitaker*, 858 F.3d at 1047). But in so doing it has ignored the text and the text's overwhelming contextual clues. *Compare id.*, *with supra* Part I. And while the Fourth Circuit has reasoned that schools can "create" but not "apply" sex-based bathroom policies, *Grimm*, 972 F.3d at 618, that semantic sleight of hand "render[s]" the statute's "carve-out" for "'facilities' . . . meaningless," *Adams*, 57 F.4th at 813 (quoting 20 U.S.C. § 1686). This split thus has a glaring logical imbalance. When this Court casts its lot, it should take the more persuasive side staked out by *Adams*.

\*     \*     \*

Title IX is a sensibly drafted statute being engulfed by hollow, outcome-motivated reasoning. If this Court needs to address Title IX's meaning, it should clarify that nothing Congress said in the statute compels the Board's policy. All available contextual clues point the opposite way, and no binding or persuasive precedent supports the Board's decision either. On that critical aspect of this case, the Plaintiff Parents and Students should prevail.

18

## CONCLUSION

If the meaning of Title IX bears on the outcome, the Court should

hold that nothing in the statute compels the Board's chosen policy.

Dated: February 21, 2024          Respectfully Submitted,

Jonathan Skrmetti
  *Attorney General & Reporter*

Andrée Sophia Blumstein
  *Solicitor General*

*/s/ Gabriel Krimm*
Gabriel Krimm
  *Assistant Solicitor General*
State of Tennessee
Office of the Attorney General
P.O. Box 20207
Nashville, TN 37202
Gabriel.Krimm@ag.tn.gov
(615) 532-5596
*Counsel for the State*
  *of Tennessee*

Russell Coleman
  *Attorney General*

Matthew F. Kuhn
  *Solicitor General*

Kentucky Attorney
General's Office
700 Capital Avenue, Suite 118
Frankfort, KY 40601
Matt.Kuhn@ky.gov
(502) 696-5478
*Counsel for the Commonwealth*
  *of Kentucky*

19

## CERTIFICATE OF COMPLIANCE

This brief complies with the Court's type-volume limitations because it contains 3,856 words, excluding portions omitted from the Court's required word count.

This brief complies with the Court's typeface requirements because it has been prepared in Microsoft Word using fourteen-point Century Schoolbook font.

*/s/ Gabriel Krimm*
Gabriel Krimm

## CERTIFICATE OF SERVICE

On February 21, 2024, I filed an electronic copy of this brief with the Clerk of the Sixth Circuit using the CM/ECF system. That system sends a Notice of Docket Activity to all registered attorneys in this case. Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

_/s/ Gabriel Krimm_
Gabriel Krimm