Case No. 23-3740

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

---

## JOHN AND JANE DOE NO. 1, et al.,

*Plaintiffs-Appellants,*

**v.**

## BETHEL LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al.,

*Defendants-Appellees*

---

On Appeal from the United States District Court for the
Southern District of Ohio
Dayton Division, No. 3:22-cv-00337

---

## CORRECTED BRIEF OF DEFENDANTS-APPELLEES

---

Lynnette Dinkler (0065455)
*Counsel of Record*
lynnette@dinkler-law.com
DINKLER LAW OFFICE, LLC
174 Lookout Drive
Dayton, OH 45419-3811
(937) 426-4200
(866) 831-0904 (fax)

John A. Podgurski (0020923)
JP@johnpodgurski.com
Law Offices of John A. Podgurski
9155 Chillicothe Road
Kirtland, OH 44094
(440) 256-2990

*Counsel for Defendants-Appellees*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: __23-3740__          Case Name: __JOHN/JANE DOE NO 1 v BETHEL, ET__

Name of counsel:  __Lynnette Dinkler__

Pursuant to 6th Cir. R. 26.1, __Bethel Local School District Board of Education, et al__
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

CERTIFICATE OF SERVICE

I certify that on _____ September 22, 2023 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/__Lynnette Dinkler__

_____

_____

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

i

**6th Cir. R. 26.1**
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a)  **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b)  **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c)  **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

ii

# TABLE OF CONTENTS

Corporate Disclosure............................................................................ i, ii

Table of Contents ................................................................................. iii

Table of Authorities ..............................................................................v

Statement Regarding Oral Argument .................................................. xii

Jurisdictional Statement ........................................................................1

Statement of Issues Presented for Review ............................................3

Statement of Case..................................................................................3

    A. Introduction ...............................................................................3

    B. Statement ..................................................................................8

        1. Procedural History ..............................................................8

        2. Factual Allegations ..............................................................9

Summary of the Argument ..................................................................12

Argument..............................................................................................14

    A. Standards of Review ................................................................14

    B. Count V (Free Exercise Clause):  The District Court properly
       dismissed the plaintiffs' Free Exercise Clause for failure to state
       a claim because the School District's interest in following the law,
       and eliminating discrimination on the basis of sex, is furthered
       by its bathroom policy ...........................................................16

    C. Count II (Title IX):  Because a court may only enter declaratory
       relief in a case of actual controversy, the District Court properly
       dismissed plaintiffs' declaratory judgment action under Title IX,

for it is speculative, incapable of redress, and seeks an advisory
opinion ...................................................................................25

   1. Plaintiffs' declaratory judgment action under Title IX is speculative
as it fails the injury-in-fact requirement ...........................................28

   2. Plaintiffs' declaratory judgment action under Title IX is incapable
of redress and unripe .......................................................32

   3. Plaintiffs' declaratory judgment action under Title IX seeks an
advisory opinion .................................................................35

   4. Argument seeking interpretation of Title IX is improper on appeal
because the District Court lacked subject-matter jurisdiction to
address it .............................................................................36

D. Count III (Fourteenth Amendment): The District Court properly
dismissed the Parent Plaintiffs' Fourteenth Amendment claim because,
their allegations, accepted as true and plausibly construed in their favor,
do not invoke a right to dictate the School District's operation under
the bathroom policy and do not invoke a right to concerning the demands
to respond to questions about the bathroom policy and teaching of
LGBTQ+ topics ...............................................................38

Conclusion ....................................................................43

Certificate of Compliance ...........................................44

Certificate of Service ...............................................45

# TABLE OF AUTHORITIES

*ACLU v. NSA*, 493 F.3d 644 (6th Cir. 2007) ........................................ 33

*Adams v. School Bd. of St. Johns Cty.*, 57 F.4th 791(11th Cir. 2022) ................ 5, 6

*Arizona v. Biden*, 40 F.4th 375 (6th Cir. 2022) .................................. 32

*Asher v. Clay Cnty. Bd. of Edu.*, 585 F. Supp. 3d 947, 965 (E.D. Ky. 2022) ........ 18

*Binno v. Am. Bar Ass'n*, 826 F.3d 338 (6th Cir. 2016) ................................... 34, 35

*Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205 (6th Cir. 2019) ......................... 15

*Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005) ....... 39, 41

*Blum v. Yaretsky*, 457 U.S. 991, 1001-02, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) ................................................................................ 30

*Bd. of Educ. of the Highland Sch. Dist. v. U.S. Dep't of Educ.,* 208 F. Supp. 3d 850 (S.D. Ohio 2016) ................................................. 23

*Bostock v. Clayton Cty.*, ___U.S.___, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020) ................................................................................ 7

*Bowen* v. *Roy*, 476 U. S. 693, 106 S. Ct. 2147, 90 L. Ed. 2d 735 (1986) ............. 20

*Breck v. Michigan*, 203 F.3d 392, 395 (6th Cir. 2000) ......................................... 22

*Brown v. Bluecross Blueshield of Tennessee, Inc.*, 827 F.3d 543 (6th Cir.2016) ........................................................................ 10

*Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 530 (1st Cir. 1995) ... 41, 42

*Calderon v. Ashmus*, 523 U.S. 740, 118 S. Ct. 1694, 140 L. Ed. 2d 970 (1998) ................................................................................ 36

*California v. Texas*, ___ U.S. ___, 141 S. Ct. 2104, 210 L. Ed. 2d 230 (2021) ................................................................................ 32

v

*Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 68 S. Ct. 431, 92 L. Ed. 568 (1948) ............................................................................ 36

*Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993) ........................................................... 20, 21, 22

*City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1995) .................................................................................................. 33

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) ............................................................... 29, 33

*C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 184 (3d Cir. 2005) .................... 41

*Coffman v. Breeze Corp.*, 323 U.S. 316, 65 S. Ct. 298, 89 L. Ed. 264, 1945 Dec. Comm'r Pat. 576 (1945) ...................................................... 36

*Craigmiles v. Giles*, 312 F.3d 220, 223 (6th Cir. 2002) ........................................ 22

*Crowley v. McKinney*, 400 F.3d 965, 971 (7th Cir. 2005) ................................... 40

*Dahlquist v. Amedisys, Inc.*, 6th Cir. No. 22-5154, 2022 U.S. App. LEXIS 28164 (Oct. 7, 2022) ............................................................................. 10

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S. Ct. 1854, 164 L. Ed. 2d 589 (2006) ...................................................................... 29

*Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) ....................... 23

*DePoutot v. Raffaelly*, 424 F.3d 112, 118 n.4 (1st Cir. 2005) .............................. 41

*Diamond v. Charles*, 476 U.S. 54, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986) ................................................................................................... 29

*Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217 (6th Cir. 2016) ........... 5. 13. 23. 31. 32

*D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324 (6th Cir. 2019) ................................... 34

*FCC v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313–14 (1993) .............................. 22

*Fieger v. Mich. Sup. Ct.*, 553 F.3d 955 (6th Cir. 2009) ......................................... 28

*Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005) .................... 41

*Flight Options, LLC v. Int'l Brotherhood of Teamsters*, 873 F.3d 540
(6th Cir. 2017) ......................................................................................... 36

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167,
120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) ............................................. 32

*Fulton v. City of Philadelphia*, ___U.S.___, 141 S.Ct. 1868, 210 L.Ed.2d 137
(2021) ......................................................................... 12, 18, 19, 21, 22

*Geboy v. Brigano*, 489 F.3d 752 (6th Cir. 2007) .................................... 10

*Goss v. Lopez*, 419 U.S. 565, 578 (1975) ............................................... 40

*Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785 (6th Cir.2015) ............................ 16

*Hollingsworth v. Perry*, 570 U.S. 693, 133 S. Ct. 2652, 186 L. Ed. 2d 768
(2013) ................................................................................................... 29

*In re Nat'l Prescription Opiate Litig.,* 976 F.3d 664, 669 (6th Cir. 2020) ............ 24

*Kanuszewski v. Michigan HHS*, 927 F.3d 396 (6th Cir.2019) ........................ 30, 31

*Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014) .......................................... 34

*Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613
(6th Cir. 2019) ....................................................................................... 31

*Kraus v. Taylor*, 715 F.3d 589, 594 (6th Cir. 2013) ............................................. 24

*Leebaert v. Harrington*, 332 F.3d 134, 141-42 (2d Cir.2003) .............................. 40

*Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606
(1996) ................................................................................................... 30

*Living Water Church of God v. Charter Twp. Of Meridian*,
258 F. App'x 729 (6th Cir. 2007) .................................................. 17, 18

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ........................................................... 35

*L.W. ex rel.Williams v. Skrmetti*,--- F.4th ---, No. 23-5600, 2023 WL 4410576 (6th Cir. July 8, 2023) ......................................................... 38

*Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 449 (1988) .......... 18

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S. Ct. 510, 85 L. Ed. 826 (1941) ........................................................ 26

*Masterpiece Cakeshop, Ltd.* v. *Colorado Civil Rights Comm'n*, 584 U. S. 617, 138 S. Ct. 1719, 201 L. Ed. 2d 35, 52 (2018) .............................. 20

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ...................................................... 27, 29, 32, 33

*Meriwether v. Hartop,* 992 F.3d 492 (6th Cir. 2021) ............................................. 18

*Meyer v. Nebraska*, 262 U.S. 390 (1923) ......................................................... 39, 40

*Moe, et al. v. David Yost, et al.*, Franklin County Court of Common Pleas, Case No.: 24CVH03-2481 ......................................................... 6

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 130 S. Ct. 2743, 177 L. Ed. 2d 461 (2010) ......................................................... 29

*Murphy v. NCAA*, 584 U.S. 453, 138 S. Ct. 1461, 200 L. Ed. 2d 854 (2018) ......................................................... 29

*Muskrat v. United States*, 219 U.S. 346, 31 S. Ct. 250, 55 L. Ed. 246, 46 Ct. Cl. 656 (1911) ......................................................... 36

*Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997) ........................ 34

*Parents Defending Edn. v. Olentangy Local School Dist. Bd. of Edn.*, S.D.Ohio No. 2:23-cv-01595, 2023 U.S. Dist. LEXIS 131707 (July 28, 2023) ......................................................... 6

*Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020) .............6, 18, 40, 41, 42

*Parker v. Hurley*, 514 F.3d 87, 102 (1st Cir. 2008) ................................................ 40

*Parsons v. U.S. Dep't of Just.*, 801 F.3d 701 (6th Cir. 2015) ................................ 32

*Pierce v. Soc. Of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) ........................................................................................................ 40, 42

*Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944) ..................................................................................................................... 39

*R.E. Dailey & Co. v. John Madden Co*., 983 F.2d 1068, No. 92-1397, 1992 WL 405282 (6th Cir. 1992) ............................................................. 24

*Roberts v. Neace,* 958 F.3d 409 (6th Cir. 2020) ..................................................... 23

*Runyon v. McCrary*, 427 U.S. 160, 177 (1976) ...................................................... 39, 41

*Safety Specialty Ins. Co. v. Genessee Cnty. Bd. of Comm'rs*, 53 F.4th 1014 (6th Cir. 2022) ................................................................................... 28, 34

*Saginaw County v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951 (6th Cir. 2020) ................................................................................................... 28

*Scarborough v. Morgan Cnty. Bd. of Educ*., 470 F.3d 250 (6th Cir. 2006) ........... 23

*Seger v. Kentucky High School Ath. Assn*., 453 F. App'x 630 (6th Cir. 2011) .................................................................................................. 23

*Sherbert* v. *Verner*, 374 U. S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963) ........................................................................................................ 20, 21

*Skoros v. City of New York*, 437 F.3d 1, 41 (2d Cir. 2006) .................................... 40

*State of Ohio ex rel. Bronwyn Croley vs. Board of Education of the Bethel Local School District, et al;* Miami County Court of Common Pleas, Civil Division, Case No: 23-393 ...................................................................... 15

*Students & Parents for Privacy v. Sch. Dirs. Of Twp. High Sch. Dist. 211,* 377 F. Supp. 3d 891 (N.D. Ill. 2019) ...................................................... 42

*Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694 (10th Cir. 1998) ................... 41

*Texas v. United States*, 523 U.S. 296, 118 S. Ct. 1257, 140 L. Ed. 2d 406
(1998) ............................................................................................................... 34

*Thomas v. Evansville-Vanderburgh Sch. Corp.*, 258 F. App'x 50
(7th Cir. 2007) ................................................................................................. 40

*Thiele v. Michigan*, 891 F.3d 240 (6th Cir. 2018) ................................................. 22

*Tiwari v. Friedlander*, 26 F.4th 355 (6th Cir. 2022) ........................................ 22, 24

*TransUnion LLC v. Ramirez*, ___ U.S. ___, 141 S. Ct. 2190,
210 L. Ed. 2d 568 (2021) ................................................................................. 29

*Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49
(2000) ..................................................................................................... 13, 38, 39

*Trump v. New York*, ___ U.S. ___, 141 S. Ct. 530, 208 L. Ed. 2d 365
(2020) ............................................................................................................... 34

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 68 S. Ct. 525, 2013 U.S.
Dist. LEXIS 149433, 92 L. Ed. 746 (1948) ........................................................ 15

*United States v. Michigan*, 940 F.2d 143 (6th Cir.1991) ....................................... 37

*Vonderhaar v. Village of Evendale*, 906 F.3d 397 (6th Cir. 2018) ....................... 29

*Wallace v. FedEx Corp.,* 764 F.3d 571 (6th Cir. 2014) ......................................... 24

*Williams v. Lee Optical of Okla., Inc.*, 348 U.S. 483 (1955) ................................. 22

*Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) ............. 40

## Constitutional Provisions and Statutes

Title IX, Education Amendments Act of 1972 ............................................... passim

U.S. Const. amend. I .................................................................................... passim

U.S. Const. amend. XIV ................................................................. passim

20 U.S.C. §§1681-1688 (2018) ..................................................... passim

28 U.S.C. § 1367(c) ............................................................................ 2

28 U.S.C. § 2201(a) ........................................................................... 28

## **Other Authorities**

https://www2.ed.gov/about/offices/list/ocr/docs/t9-unofficial-final-rule-2024.pdf
.................................................................................................... 7

## STATEMENT REGARDING ORAL ARGUMENT

The parties agree this case presents important issues of statutory and constitutional law. Defendants join in plaintiffs' request for oral argument.

## JURISDICTIONAL STATEMENT

The District Court dismissed Count II, seeking an advisory opinion on whether Title IX required Defendants "to implement an intimate facility policy based upon gender identity," for lack of standing. Compl., R.1, PageID#18-19; Dismissal Order, R.94, PageID#2011. The District Court dismissed Count III, a Fourteenth Amendment challenge seeking to revoke the school's accommodation policy on student bathroom usage, because it failed to state a claim as the plaintiffs possess no such constitutional right. Compl., R.1, PageID#19-20; Dismissal Order, R.94, PageID#2011. Not appealed, the District Court dismissed Count IV, an Equal Protection challenge to the accommodation policy, for lack of standing because it lacked disparate treatment. Compl., R.1, PageID#20-22; Dismissal Order, R.94, PageID#2011. The District Court dismissed Count V, a Free Exercise Clause challenge to the accommodation policy, because it failed to state a claim as the Complaint lacked "plausible allegations undermining the policy's neutrality or showing animus – let alone show[ing] that the possible presence of a transgender student in the bathroom is a "substantial burden" to the Plaintiffs' Free Exercise Clause rights." Compl., R.1, PageID#22-23; Dismissal Order, R.94, PageID#2011-12. Not appealed, the District Court dismissed Count VI, a purported claim brought under the Protection of Pupil Rights Amendment ("PPRA"), because it failed to state a claim, "assuming that Plaintiffs can sue under the PPRA." Compl., R.1,

PageID#23-24; Dismissal Order, R.94, PageID#2012. The District Court dismissed Count I without prejudice, a pendant state law claim alleging an Ohio Open Meetings Act claim, and an Ohio Constitutional challenge because it declined to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c).

Relevant to jurisdiction, Lydda Mansfield, Lori Sebastian, Danny Elam and Jacob King, all named in official capacity only as board of education members, no longer serve the board of education. Compl., R.1, PageID#6. The Plaintiffs limited their claims against the individuals named in official capacity only to the now appealed declaratory judgment action and dismissed injunctive relief claim (Motion to Dismiss, R.79, PageID#1663-64), but despite knowing these individuals are former board members, continue to pursue this claim against them (Plaintiffs' Brief, Doc. 18, PageID#16). Dismissal, regardless of the outcome of the appeal, is appropriate for Lydda Mansfield, Lori Sebastian, Danny Elam and Jacob King.

<u>**STATEMENT OF ISSUES PRESENTED FOR REVIEW**</u>

1. Is the School District's enforcement of the bathroom policy, as advised by general counsel, consistent with Free Exercise Clause of the U.S. Constitution?

2. Do the plaintiffs seek an advisory opinion, and thereby lack Article III standing, by asserting a declaratory judgment action under Title IX?

3. Is the School District's operation of its district, including enforcement of the bathroom policy and state mandated curriculum, and alleged refusal to answer all parent plaintiff questions consistent with the Fourteenth Amendment of the U.S. Constitution?

<u>**STATEMENT OF CASE**</u>

**A.     Introduction**

After the single transgender high school student, Anne Roe, receives requested accommodation to use the communal restroom with which she identifies, plaintiffs sue the public School District and various officials in their official capacity only.  The School District serves 1,868 students in a one building campus.  The building contains communal restrooms for girls, communal restrooms for boys, and single occupancy restrooms any student can use by completing and submitting a form to the administration.  Chrispin Dec, ¶¶ 7, 11, Doc. 18-5, PageID#641-642; Appendix (filed under seal); Jones Dec, ¶ 8, Doc. 18-7, Page ID#647); Schoch Dec, ¶ 8, Doc. 18-8, Page ID#650; Swope Dec, ¶ 6, Doc. 21-2, Page ID#681; Zigler Dec, ¶ 5, 8, Doc. 18-6, Page ID#644-645.    The communal restrooms throughout the School District have partitioned stalls for privacy.  Chrispin Dec, ¶ 7, Doc. 18-5,

PageID#641.   If people (people, not transgender students) enter communal restrooms, locker rooms, or intimate space for improper purposes, the school hallways are equipped with security video cameras to aid in the investigation of any such complaint.  *Id*.

While no student has to date, if a transgender student requests locker room access accommodation aligning with his/her sexual identity, a single use restroom will be assigned to the student for use as the locker rooms do not presently have any private changing areas.   Chrispin Dec., R.18-5, PageID#642, ¶15.   The School District student population is diverse.   *Id.* at 16. The Board of Education Policies acknowledge free exercise of religion and separation of church and state within the context of student rights, and in other contexts.   *Id.* The School District abides by the Ohio Learning Standards which require curriculum and learning on the five major religions. *Id.*   Board Policy also governs school clubs.   *Id.*   Currently in the High School, in addition to many other clubs, Fellowship of Christian Athletes and Gay-Straight Alliance are offered to students.   *Id.*

Plaintiffs object to accommodation of a transgender student claiming it violates the Free Exercise Clause, Title IX (seeking an advisory opinion under the auspices of a declaratory judgment action), and the Fourteenth Amendment.

Plaintiffs proclaim the School District received "bad [legal] advice, and for no other reason, the school board adopted a new policy allowing students to use

4

what-ever communal restrooms accord with their perceived gender." Plaintiffs'
Brief, Doc. 18, PageID#3-4.  While the District Court, and others, agree with the
advice, Plaintiffs' proclamation evidences their concession that the School District
– its administration, and elected officials – never acted with discriminatory animus
towards anyone, including religious and non-religious plaintiffs.  The application of
written anti-discrimination board policy, as directed by legal counsel, to
accommodate the single transgender student identifying as female, Anne, is neutral
on its face, even when the religious and non-religious plaintiffs object.  People are
always free to disagree.  Disagreement does not form the basis of discrimination
under the Free Exercise Clause or Fourteenth Amendment.  Further, plaintiffs do not
challenge that Anne suffers harm if not accommodated. Anne Roe Decl., R.13-1,
PageID#120-129, Joanne Roe Decl., R.l3-1, PageID#131-136.

Bad legal advice?  Plaintiffs ignore *Dodds v. U.S. Dep't of Educ.*, 845 F.3d
217, 221 (6th Cir. 2016) (suggesting that Title IX may prohibit discrimination on the
basis of gender non-conforming behavior while denying a school district's motion to
stay a preliminary injunction imposed by Judge Algenon L. Marbley, Chief United
States District Judge, Southern District of Ohio, Eastern Division) when sounding
this false alarm.  Plaintiff's citation to the Eleventh Circuit opinion, *Adams v. School*

*Bd. of St. Johns Cty.*, 57 F.4th 791, 811-15 (11th Cir.2022) (en banc),[1] which contains dissenting opinions from four of the presiding judges (*Adams* at 821-860), is not binding on this Court. The plaintiffs ignore Chief Judge Marbley's opinion analyzing challenges to anti-discrimination policies protecting transgender students in one of Ohio's largest public schools where plaintiffs are denied injunctive relief, *Parents Defending Edn. v. Olentangy Local School Dist. Bd. of Edn.*, S.D.Ohio No. 2:23-cv-01595, 2023 U.S. Dist. LEXIS 131707 (July 28, 2023) (appeal filed Jul. 31, 2023, No. 23-3630). There, Chief Judge Marbley rejects the Eleventh Circuit's analysis in *Adams*. *Parents Defending Edn.* at *21-23. The plaintiffs ignore *Parents for Privacy v. Barr*, 949 F.3d 1210, 1235 (9th Cir. 2020), discussed by the District Court. Dismissal Order, R.94, PageID#2036-37.

Since the filing of the plaintiffs' brief, the Ohio Attorney General's defense of the Ohio General Assembly's enactment of the Saving Ohio Adolescents from Experimentation Act, over Governor DeWine's veto, regarding gender transition services for minors, and the Save Women's Sports Act, has met a roadblock. An Ohio state court ordered a temporary injunction, which it extended, enjoining defendants from enforcing the Act. *Moe, et al. v. David Yost, et al.*, Franklin County Court of Common Pleas, Case No.: 24CVH03-2481, Order and Entry, Apr. 16, 2024;

---

[1] The *Adams* opinion is filed December 30, 2022, over a month after plaintiffs' November 22, 2022 Complaint.

Decision and Entry, Apr. 30, 2024.  On April 19, 2024, the U.S. Department of Education released its final rule to fully effectuate Title IX's promise that no person experiences sex discrimination in federally funded education, mandates that schools are prohibited from sharing personal information related to those protected under Title IX, warns that while state may enact their own laws, state laws abridging federally protected rights are pre-empted by federal law, and states that reliance on *Bostock v. Clayton Cty.,* _____ U.S. _____, 140 S.Ct. 1731, 207 L.Ed.2d 218 (2020) and Title VII case law is appropriate when interpreting the protections of Title IX. 34 CFR Part 106, at 74, 1213-1228 (unofficial version) (https://www2.ed.gov/about/offices/list/ocr/docs/t9-unofficial-final-rule-2024.pdf) (last visited May 12, 2024).

Plaintiff parents are not compelled to send their school aged children to the School District for their primary education if they object to all students receiving proper protection under the law, or for any other reason.  The record here demonstrates those objecting to transgender people receiving protection from discrimination would never admit to having received adequate information from the School District, because a "host of questions" will always exist on this contentious issue.  Plaintiffs' Brief, Doc. 18, PageID#15.  For plaintiffs, Anne Roe's transfer into the School District was "trouble."  Plaintiffs' Brief, Doc, 18, PageID#16.

As District Court Judge Michael J. Newman concludes, after careful consideration of the pleadings, evidence, and law:

> Not every contentious debate, concerning matters of public importance, presents a cognizable federal lawsuit. Although the parties, undoubtedly, seek to vindicate what they believe is the truth, the allegations in the complaint do not pass legal muster under the applicable methods of constitutional, statutory, or precedential interpretation.

Dismissal Order, R. 94, PageID#2048. The District Court's Dismissal Order should be affirmed because it properly dismissed all purported alleged federal claims and because it properly declined to exercise jurisdiction over state law claims.

In deciding this appeal, jurisdiction is lacking to reach issues not considered by the District Court. On appeal, state law constitutional issues are not before the Court, nor is a merit argument on whether the bathroom policy is compliant with Title IX (an issue not relevant to the appealed claims).

## B. Statement

### 1. Procedural History

Plaintiffs' complaint is filed November 22, 2022 and they moved for preliminary injunction, not relevant to the instant appeal, on the state law Open Meetings Act claim. Compl., R. 1, PageID#4, 24; Motion for Prel. Inj., R. 5, PageID#51-64. Because the status of each plaintiff is relevant to the nature of the alleged federal claims, the District Court grouped plaintiffs on

relevant characteristics, which goes unchallenged by the plaintiffs. Dismissal Opinion, R. 94, PageID#2005-2009. None of the student plaintiffs attended high school with Anne Roe. "Plaintiffs are: (1) students who attend middle school in the Bethel Local School District in Tipp City, Ohio, (listed as Child No. 1A" through "Child 7F"); (2) parents of the students named as Plaintiffs (listed as "John Doe" and "Jane Doe"); and (3) other parents whose children are Bethel Middle School students but not named as Plaintiffs in this case. *See* Compl, R. 1 at PageID#4-5." Dismissal Opinion, R. 94, PageID#1999.

The District Court succinctly details its procedural history leading to the Dismissal Order of the plaintiffs' complaint:

> The Court granted Anne's unopposed motion to intervene on January 20, 2023. Doc. No. 30. The Court held oral argument on the preliminary injunction motion on February 7, 2023. Because the parties had not addressed standing or the pending state court litigation, this Court ordered briefing on both issues. Doc. Nos. 52, 64. Once those issues became ripe for review, Anne filed a motion to dismiss Counts II through V for lack of subject matter jurisdiction and failure to state a claim. Doc. No. 75. The Court then set a deadline—requiring Defendants to file any remaining motions to dismiss by April 12, 2023. Defendants did so, Doc. No. 79, and in Plaintiffs' opposition memorandum, Doc. No. 85, they requested oral argument on the motions to dismiss. The Court heard such oral argument May 9, 2023.

## 2. Factual Allegations

The School District adopts the District Court's Underlying Facts.[2]

---

[2] For purposes of this appeal only, complaint allegations are not admitted as true.

Dismissal Order, R. 94, PageID#1999-2004. From a factual basis, the plaintiffs have failed to satisfy their burden of identifying factual allegations and/or factual findings exist to vest the District Court with subject matter jurisdiction. See *Brown v. Bluecross Blueshield of Tennessee, Inc.*, 827 F.3d 543, 545 (6th Cir.2016), fn. 3. While this Court reviews de novo the District Court's rulings under Rule 12(b)(6), neither Plaintiffs' Statement nor its Argument assigns error to the District Court's application of the pleading allegations or its factual findings, forfeiting appellate review. *Dahlquist v. Amedisys, Inc.*, 6th Cir. No. 22-5154, 2022 U.S. App. LEXIS 28164, at *3 (Oct. 7, 2022) ("On appeal, the plaintiffs argue that the district court erred by granting Amedisys's Rule 12(b)(6) motion with respect to their THRA and common-law claims. By limiting their brief to those issues, the plaintiffs have forfeited appellate review of the remainder of the district court's dismissal order. See *Geboy v. Brigano*, 489 F.3d 752, 766-67 (6th Cir. 2007)."). Instead, they argue the law should reach a different result based upon history and morals.

The plaintiffs concede the lack of access to the communal restrooms harmed Anne and negatively affected her school performance, as the District Court concluded. Plaintiffs' Brief, Doc. 18, PageID#27-28; Dismissal Order, R. 94, PageID#1999-2000. Anne Roe Decl., R.13-1, PageID#120-129, Joanne Roe Decl.,

R.l3-1, PageID#131-136. The plaintiffs do not challenge School District Superintendent Firks granted Anne's request for accommodation to use the communal restrooms under the School Board's Anti-Harassment Policy. Dismissal Order, R. 94, PageID#2000; Firks Dec., R. 48-1, PageID#1053; Board Policy 1662, R. 162, PageID#223-230. While the plaintiffs clamor that they hold a limitless right to have questions answered by the School Board, and essentially argue that they should have been the decider of Anne's request for accommodation and the School District's curriculum, they do not challenge the District Court's findings related to its written policy related to taking all reasonable efforts to protect individuals subject to what the School District determines to be discriminatory conduct, and the privacy protections owed to documents and information detailing discriminatory conduct, such as those required by the Americans with Disabilities Act and the Family Educational Rights and Privacy Act. Dismissal Order, R. 94, PageID#2001; Board Policy 1422, R. 16-2, PageID#211-12.

Otherwise, the plaintiffs base their claims on faith defined Muslim and Christian objections and non-religious objections. Plaintiffs' Brief, Doc. 18, PageID#19-20. The District Court properly analyzed these allegations in rejecting the plaintiffs' claims. Dismissal Order, R. 94, PageID# 2006-2009

## SUMMARY OF THE ARGUMENT

Regarding Count V, the federal Free Exercise Clause claim, neither defendants nor the District Court challenged the plaintiffs' religious beliefs are sincerely held. The religious plaintiffs and non-religious plaintiffs are similarly affected by the School District's enforcement of its bathroom policy, a policy it enforced based upon its general counsel's advice. No discriminatory animus exists. Other than holding a sincerely held religious belief, the religious plaintiffs fail to carry the burden of proving every element of a federal Free Exercise claim. Dismissal Opinion, R.94, PageID#2031-2039. Religious plaintiffs' discussion, for the first time on appeal, of the U.S. Supreme Court's decision in *Fulton v. City of Philadelphia*, ___U.S.___, 141 S.Ct. 1868, 210 L.Ed.2d 137 (2021), does not change the outcome of this case. Plaintiffs' Brief, Doc. 18, PageID#39-41; Plaintiffs' Memo Opp MTD-MJP (Roe), R. 81, PageID#1676-1678; See also, Plaintiffs' Memo Opp MTD-MJP (BOE), R. 85. *Fulton* does not apply. Otherwise, the religious plaintiffs' attempt to secure a ruling on a state free exercise claim is improper as the District Court declined to exercise supplemental jurisdiction. For these reasons, as defendants argued below and as detailed by the District Court, the dismissal order should be affirmed.

Regarding Count II, the Title IX declaratory judgment claim, the District Court dismissed it for lack of standing. Ultimately, after considering all the

plaintiffs' arguments below and here, the plaintiffs sought and continue to seek nothing more than an advisory opinion (Dismissal Opinion, R.94, PageID#2017-18), which is forbidden under Article III. They failed to satisfy the jurisdictional pre-requisites of injury-in-fact (Dismissal Opinion, R.94, PageID#2012-15) and redressability (noting even a misinterpreted Title IX interpretation by the School District bears not on whether the School District may legally continue to enforce its policy) (*id.* at R.94, PageID#2015-17). The District Court specifically held "an adjudication on Anne's possible Title IX challenge is unripe," and the plaintiffs backdoor attempts to secure one here, or a revisiting of *Dodds v. U.S. Dep't of Educ., 845 F.3d 217, 222 (6th Cir. 2016),* as part of this appeal on Rule 12 motion practice, must be rejected. Dismissal Opinion, R.94, PageID#2017. For these reasons, as defendants argued below and as detailed by the District Court, the dismissal order should be affirmed.

Regarding Count III, the federal Fourteenth Amendment claim, the parent plaintiffs' claims "to make decisions concerning the care, custody, and control of their children" under *Troxel v. Granville*, 530 U.S. 57, 66 (2000), as it relates to the bathroom policy and the plaintiff parents' desire to shield their students from a same-sex person in the bathroom, and as it relates to the plaintiff parents wanting questions answered related to the policy, and as it relates to alleged non-academic instruction on controversial topics. While the plaintiff parents have standing to assert the claim,

their claim fails as a matter of law on the pleadings. Dismissal Opinion, R.94, PageID#2018-19. The law does not vest parents with an unqualified right to control a school district's policy, instruction, or to control discussions – i.e. require a school district to submit to interrogation. Parents are free in this country to send their children to school where they see fit. United States Supreme Court, Sixth Circuit, and sister circuit decisional law, of recent date, all require dismissal of this claim, for the reasons pronounced by the District Court. Dismissal Opinion, R.94, PageID#2018-26. The parent plaintiffs historical and morality-based arguments do change the proper interpretation of the mandatory or persuasive decisional law. For these reasons, as defendants argued below and as detailed by the District Court, the dismissal order should be affirmed.

## ARGUMENT

### A.    Standards of Review

The standards of review applied by the District Court should be adopted in full. Dismissal Opinion, Doc. 94, Page ID 2009-2011; 2045-2048. Plaintiffs' standards of review do not claim the District Court applied an incorrect standard of law in dismissing their Complaint. Plaintiffs' Brief, Doc. 18, PageID#36-39.

The clearly erroneous standard relevant to the de novo review of subject-matter jurisdiction factual findings means this: ""A [factual] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 2013 U.S. Dist. LEXIS 149433, 92 L. Ed. 746 (1948)." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir.2019).

As for the District Court's order declining supplemental jurisdiction over the state law Open Meetings Act claim, a state court continues to presently have before it an Open Meetings Act challenge against the School District concerning the same events alleged in Plaintiffs' Complaint. Dismissal Opinion, R. 94, PageID#2004-2005. The relator in that action voluntarily dismissed the action when she retained new legal counsel and re-filed the action, which remains pending. See *State of Ohio ex rel. Bronwyn Croley vs. Board of Education of the Bethel Local School District, et al;* Miami County Court of Common Pleas, Civil Division, Case No: 23-393. Otherwise, plaintiffs affirm they do not "appeal the District Court's decision not to accept jurisdiction over certain state-law claims, including their claim alleging that Bethel violated Ohio's Open Meetings Act." Plaintiffs' Brief, Doc. 18, PageID#22. As for both the Open Meetings Act Claim and Ohio Constitutional claim, plaintiffs acknowledge a district court never abuses its discretion by declining to exercise supplemental jurisdiction where all federal claims are dismissed. Plaintiffs' Brief, Doc. 18, PageID#28.

Plaintiffs' citation to *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 806 (6th Cir.2015) lacks context, as it relates to the plaintiffs' dismissed Article I, §7 of the Ohio Constitution claim.  Plaintiffs' Brief, Doc. 18, PageID#21.  *Grubbs* held the district court did not abuse its discretion where it declined to exercise supplemental jurisdiction over state law claims after it dismissed all federal claims.  *Id.*  Because the Sixth Circuit reversed the order of the district court dismissing one of the federal claims, it ordered "the district court on remand should re-examine whether to exercise its discretion to hear any of the remaining state law claims." *Id.*  No review here is appropriate of the State Constitutional Claims, or the merits of if and how Title IX applies.

**B.      Count V (Free Exercise Clause):   The District Court properly dismissed the plaintiffs' Free Exercise Clause for failure to state a claim because the School District's interest in following the law, and eliminating discrimination on the basis of sex, is furthered by its bathroom policy.**

The Muslim and Christian plaintiffs' Free Exercise Clause fails on the merits, because the School District, in following its general counsel's legal advice to enforce its generally applicable anti-discrimination policy, acted neutrally.  This said, the School District has always acknowledged both student groups have sincerely held religious beliefs preventing them from sharing bathrooms with the opposite gender and receiving instruction about LGBTW+[3].

---

[3] The School District denies such instruction occurred.

The review to be conducted here is one of rational basis because the accommodation granted to Anne under the anti-discrimination policy is generally applicable. Dismissal Order, Doc. 94, PageID#2037.

All plaintiffs, religious and non-religious, claim the School District's enforcement of its anti-discrimination policy occurs as the result of having received bad legal advice. Plaintiffs Brief, Doc. 18, PageID#13-16, 43-46. The policy exists for reasons of legal compliance, as plaintiffs admit in arguing the School District acted upon its receipt of legal advice, not a showing of preferential treatment of secular beliefs. No evidence of preferential treatment of secular beliefs is plead in plaintiffs' complaint. All plaintiffs, religious and non-religious, claim to have experienced the same impact related to the School District's enforcement of its anti-discrimination policy for Anne – not wanting to use the communal restrooms. Plus, the plaintiffs acknowledge Anne's harm.

As for the purported donated construction supplies allegedly used to construct a single occupancy restroom, this loan allegation fails to form the basis of animus required save the fatally flawed Free Exercise claim. Plaintiffs' Memo Opp MTD-JMP (Roe), See R. 81, PageID#1725-28. Plaintiffs steadfastly argue the School District acted to prevent discrimination on the basis of sex as directed by general counsel. Dismissal Opinion, R. 94, PageID#2035 citing *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007) (quoting

*Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 449 (1988), Bd Mtg Transcript, R. 17-2, PageID#593–94; Mansfield Dec., R. 18-3, PageID# 635–36; Franz Dec., R. 37-3, PageID#816; Firks Dec., R. 48-1, PageID#1053.

The District Court rejected the plaintiffs' arguments under *Meriwether v. Hartop,* 992 F.3d 492 (6th Cir. 2021) holding plaintiffs do not nor could they make similar allegations for the reasons stated above. Dismissal Order, R. 94, PageID#2035. The District Court considered, alternatively, even if plaintiffs could allege the policy lacks neutrality or general applicability, no substantial burden on their religious practice is plead or exists, citing *Living Water* and *Asher v. Clay Cnty. Bd. of Edu.*, 585 F. Supp. 3d 947, 965 (E.D. Ky. 2022). Dismissal Order, R. 94, PageID#2035-36.

*Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020), as the District Court notes, is the only circuit decision to address the issue and concludes similarly to Judge Newman. Dismissal Order, R. 94, PageID#2036-37. There, like here, the policy makes no mention to any religious practice, and is generally applicable because it was not underinclusive. There, like here, the challenged policy easily passed rational basis review. *Id.* Plaintiffs argue the *Parents for Privacy* case is wrongly decided because it is "pre-*Fulton*." Plaintiffs' Brief, Doc.18, PageID#40. For the reasons discussed next, plaintiffs' argument is wrong.

The religious plaintiffs argue, for the first time on appeal, that the 2021 *Fulton v. City of Philadelphia*, ___U.S.___, 141 S.Ct. 1868, 210 L.Ed.2d 137 (2021) decision requires reversal of the District Court's decision.  Plaintiffs' Brief, Doc. 18, PageID#39-41; Plaintiffs' Memo Opp MTD-MJP (Roe), R. 81, PageID#1676-1678; See also, Plaintiffs' Memo Opp MTD-MJP (School District), Doc. 85.  *Fulton* does not apply.

*Fulton* decided the City of Philadelphia violated the Free Exercise Clause when it refused to continue to contract with Catholic Social Services ("CCS") because CCS refused to certify unmarried couples, regardless of sexual orientation, or same-sex married couples, as foster parents, citing CCS's religious belief that marriage is a sacred bond between a man and a woman.  *Fulton*, 141 S.Ct. 1868, 1874-76.  The City explained CCS's refusal to certify same-sex couples violated both a non-discrimination provision in CCS's contract with the city as well as the non-discrimination requirements of the City's Fair Practices Ordinance.  *Id.*  The Supreme Court held the city's refusal to continue to contract with CCS unless CCS agrees to certify same-sex couples as foster parents violated the Free Exercise Clause.  *Id*. at 1882.

The Court's rational illustrates why this decision does not support reversal. To the contrary, the Court's rational and discussion of its earlier decisions, those

relied upon by the District Court, demonstrate why the religious plaintiffs' Free Exercise claim was properly dismissed.

The School District responded to Anne to apply its neutral and generally applicable non-discrimination policy to grant her access to the communal restroom. Philadelphia responded to CCS to end its foster care referrals to CCS because of CCS's refusal to abandon its religious belief objecting to same-sex marriage.

The Court found it "straightforward" "to resolve this case under the rubric of general applicability." *Id.* at 1877. It wrote:

> Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature. See *Masterpiece Cakeshop, Ltd.* v. *Colorado Civil Rights Comm'n*, 584 U. S. ___, ___-___, 138 S. Ct. 1719, 201 L. Ed. 2d 35, 52 (2018); *Lukumi*, 508 U. S., at 533, 113 S. Ct. 2217, 124 L. Ed. 2d 472. CSS points to evidence in the record that it believes demonstrates that the City has transgressed this neutrality standard, but we find it more straightforward to resolve this case under the rubric of general applicability.

> A law is not generally applicable if it "invite[s]" the government to consider the particular reasons for a person's conduct by providing "'a mechanism for individualized exemptions.'" *Smith*, 494 U. S., at 884, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (quoting *Bowen* v. *Roy*, 476 U. S. 693, 708, 106 S. Ct. 2147, 90 L. Ed. 2d 735 (1986) (opinion of Burger, C. J., joined by Powell and Rehnquist, JJ.)). For example, in *Sherbert* v. *Verner*, 374 U. S. 398, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963), a Seventh-day Adventist was fired because she would not work on Saturdays. Unable to find a job that would allow her to keep the Sabbath as her faith required, she applied for unemployment benefits. *Id.*, at 399-400, 83 S. Ct. 1790, 10 L. Ed. 2d 965. The State denied her application under a law prohibiting eligibility to claimants who had "failed, without good cause . . . to accept available suitable work." *Id.*, at 401, 83 S. Ct. 1790, 10 L. Ed. 2d 965(internal quotation

marks omitted). We held that the denial infringed her free exercise rights and could be justified only by a compelling interest. *Id.*, at 406, 83 S. Ct. 1790, 10 L. Ed. 2d 965.

*Smith* later explained that the unemployment benefits law in *Sherbert* was not generally applicable because the "good cause" standard permitted the government to grant exemptions based on the circumstances underlying each application. See 494 U. S., at 884, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (citing *Roy*, 476 U. S., at 708, 106 S. Ct. 2147, 90 L. Ed. 2d 735; *Sherbert*, 374 U. S., at 401, n. 4, 83 S. Ct. 1790, 10 L. Ed. 2d 965). *[7] Smith* went [***15] on to hold that "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." 494 U. S., at 884, 110 S. Ct. 1595, 108 L. Ed. 2d 876 (quoting *Roy*, 476 U. S., at 708, 106 S. Ct. 2147, 90 L. Ed. 2d 735); see also *Lukumi*, 508 U. S., at 537, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (same).

A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way. See *id.*, at 542-546, 113 S. Ct. 2217, 124 L. Ed. 2d 472. In *Church of Lukumi Babalu Aye, Inc.* v. *Hialeah*, for instance, the City of Hialeah adopted several ordinances prohibiting animal sacrifice, a practice of the Santeria faith. *Id.*, at 524-528, 113 S. Ct. 2217, 124 L. Ed. 2d 472. The City claimed that the ordinances were necessary in part to protect public health, which was "threatened by the disposal of animal carcasses in open public places." *Id.*, at 544, 113 S. Ct. 2217, 124 L. Ed. 2d 472. But the ordinances did not regulate hunters' disposal of their kills or improper garbage disposal by restaurants, both of which posed a similar hazard. *Id.*, at 544-545, 113 S. Ct. 2217, 124 L. Ed. 2d 472. The Court concluded that this and other forms of underinclusiveness meant that the ordinances were not generally applicable. *Id.*, at 545-546, 113 S. Ct. 2217, 124 L. Ed. 2d 472.

*Fulton*, at 1877.

Here, the challenged bathroom policy is neutral and one of general applicability as a result of legal advice, as plaintiffs acknowledge the School District

announced. There are no exemptions or application of discretion like that present in the contract at issue in *Fulton*. *Id.* at 1878. The anti-discrimination policy is ban on discrimination on the basis of sex. It was the contractual non-discrimination requirement that imposed an impermissible constitutional burden on CCS's free exercise of religion and, for that reason, the contract provision with CCS did not qualify as generally applicable, and required a strict scrutiny review under *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). *Id.* at 1881. Here, the anti-discrimination policy applies to protect all students from discrimination on the basis of sex, therefore, the challenged policy is neutral and one of general applicability. The School District, unlike the facts in *Fulton*, took no action based upon the religious plaintiffs' sincerely held beliefs.

The impact of the general and neutral policy here is alleged to impact the religious and non-religious plaintiffs in the exact same way. The District Court held:

> Because the bathroom policy is generally applicable, it is subject only to rational basis review. "Right or wrong, rational-basis review epitomizes a light judicial touch." *Tiwari v. Friedlander*, 26 F.4th 355, 361 (6th Cir. 2022) (first citing *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313–14 (1993); and then citing *Williams v. Lee Optical of Okla., Inc.,* 348 U.S. 483, 487–88 (1955))). This review is satisfied if "the regulation bear[s] some rational relation to a legitimate state interest[,]" *Craigmiles v. Giles*, 312 F.3d 220, 223 (6th Cir. 2002) (citations omitted), and the Court's inquiry "does not assess the wisdom of the challenged regulation." *Thiele v. Michigan,* 891 F.3d 240, 244 (6th Cir. 2018) (quoting *Breck v. Michigan*, 203 F.3d 392, 395 (6th Cir. 2000)). "[A] plaintiff may demonstrate that the government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by demonstrating that the challenged

government action was motivated by animus or ill-will." *Davis v. Prison Health Servs.,* 679 F.3d 433, 438 (6th Cir. 2012) (cleaned up) (quoting *Scarborough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006)).

The District Court correctly concluded the religious plaintiffs failed to plausibly allege a substantial burden on their religious practice. Dismissal Order, R.94, PageID#2035. All students, including all plaintiffs, religious and non-religious, have access to all restrooms, communal and single occupancy. Dismissal Order, R.94, PageID#2036. This policy does not protect secular activities more than comparable religious ones, either. Dismissal Order, R.94, PageID#2037, citing *Roberts v. Neace,* 958 F.3d 409 (6th Cir. 2020) at 415 (collecting cases); *Seger v. Kentucky High School Ath. Assn.,* 453 F. App'x 630 (6th Cir. 2011) at 634.

To the extent plaintiffs are asking this Court to re-decide *Dodds*, the facts of this case, at this motion to dismiss stage, do not call for it. The District Court explains, in concluding its analysis on the Free Exercise claim:

> A rational basis exists here. The School District, as President Mansfield stated at the January 10, 2022 meeting, adopted its policy to not run afoul of federal law, including published decisions from the Sixth Circuit and this Court, which found that a school violated Title IX and the Equal Protection Clause when it prevented a transgender student from using a bathroom that aligned with the student's gender identity. See Doc. No. 17-2 at PageID 593–94; *Bd. of Educ. of the Highland Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 854 (S.D. Ohio 2016), aff'd, *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 222 (6th Cir. 2016). Although Plaintiffs have expressed doubts that this Sixth Circuit published decision binds this Court because it was an appeal of a motion seeking a stay of a preliminary injunction, Doc. No. 81 at PageID 1691–93, the Sixth Circuit has noted, "While the decisions

23

of motions panels are generally interlocutory in nature (and, thus, not strictly binding upon subsequent panels), they do receive some measure of deference." *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014) (first citing *Kraus v. Taylor*, 715 F.3d 589, 594 (6th Cir. 2013); and then citing *R.E. Dailey & Co. v. John Madden Co.*, 983 F.2d 1068, No. 92-1397, 1992 WL 405282, at *1 n.1 (6th Cir. 1992)); see also *In re Nat'l Prescription Opiate Litig.*, 976 F.3d 664, 669 (6th Cir. 2020). This means that the School District can give this decision that same "measure of deference[,]" *Wallace,* 764 F.3d at 583, and decide to conform its bathroom policy to the Sixth Circuit's pronouncements. The School District's interest in following the law, and eliminating discrimination on the basis of sex, is furthered by its policy. This is the rational basis review's "light judicial touch," of which the Sixth Circuit speaks, see *Tiwari,* 26 F.4th at 361, and it allows schools to err on the side of caution and afford individuals more rights than they might be entitled to. Thus, the Plaintiffs fail to state a claim under the Free Exercise Clause.

Dismissal Order, R. 94, PageID#2038-39.

After dismissing the religious plaintiffs' Free Exercise claim under Rule 12(c), the District Court properly declined to exercise supplemental jurisdiction over the religious plaintiffs' state law constitutional claim. Plaintiffs' Brief, Doc. 18, PageID#38. Plaintiffs' analysis of Article I, §7 of the Ohio Constitution, and that offered by *Amicus Curiae Ohio* is not relevant at this stage of the litigation and must be ignored[4]. That issue is for another day, in an Ohio state court, unless this Court issues a remand order for re-evaluation of supplemental jurisdiction.

---

[4] There are no facts in this record where a student would be shielding his or her body from another student, cf Ohio Brief, R. 21, PageID# 22.

**C.     Count II (Title IX):  Because a court may only enter declaratory relief in a case of actual controversy, the District Court properly dismissed plaintiffs' declaratory judgment action under Title IX, for it is speculative, incapable of redress, and seeks an advisory opinion.**

Plaintiffs below and now continue to improperly seek an advisory opinion interpreting Title IX, which is not relevant to the disposition of the legal issues. Aside from all of the other fatal defects barring the declaratory judgment action for lack of standing, the School District is permitted to extend protections   Title IX to Anne, should it so choose, "making any decision on whether the policy comports with Title IX superfluous, and of no real legal effect."  Dismissal Order, R. 94, PageID#2015; Decs. of Elam, King, Mansfield, Sebastian, Chrispin, R. 18-1 to 18-5, PageID#630-643; cf. Plaintiffs' Brief, Doc. 18, PageID#51, 54-55, where plaintiffs claim with no legal citation that the School District cannot extend protections beyond Title IX to Anne, instead couching the argument as a clearly erroneous factual finding.  The Court's determination is based upon the application of mandatory standing law and otherwise its application of the facts are not clearly erroneous.  Plus, no facts are alleged or otherwise in record showing the School District's accommodation for Anne is related in any way, whatsoever, on the basis of plaintiff students' male or female sex.  And, plaintiffs' standing still fails for the other reasons argued by defendants and pronounced by the District Court.

Plaintiffs never discuss the School District allows, with the completion of a simple form, all students access to single occupancy restrooms. Chrispin Dec., R.

18-5, PageID#641-642. Plaintiff students may choose not to use the communal restrooms and/or the single occupancy restrooms, but they have access to both. At every turn, the Plaintiffs argue the School District received legal advice and never make the argument that the School District "would adopt sex-segregated facilities if its interpretation of Title IX turned out to be incorrect." Dismissal Opinion, R. 94, PageID#2013.

On appeal for the first time, the plaintiffs' new argument that "Bethel would have no choice but to abandon its new policy, curing the plaintiffs' injuries," if they are issued "a judgment declaring that Title IX permits sex-segregated restrooms" must be rejected for it is waived and because it is contrary to law. Plaintiffs' Brief, Doc. 18, PageID#52. The same holds true for plaintiffs' new political argument that the School District should refuse federal funding to alleviate itself from Title IX compliance concerns. Plaintiffs' Brief, Doc. 18, PageID#51. It is irrelevant to the legal issues before this Court and was never argued before the District Court.

As the District Court observed, the United States Supreme Court's holdings "have required that the dispute be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and that it be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id*., at 240-241, 57 S. Ct. 461, 81 L. Ed. 617. In *Maryland Casualty*

*Co. v. Pacific Coal & Oil Co*., 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941), we summarized as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[7]" *MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127, fn 7, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).

Defendants below challenged the plaintiffs' declaratory judgment action under Title IX because it is speculative, incapable of redress, and seeks an advisory opinion. The District Court held the plaintiffs have failed to allege facts to establish standing, including their "alternative theory" that Anne's mother's communication, stating she recently learned she could make a filing with the Department of Education, does not breathe life into plaintiffs' legally deficient claim. Dismissal Order, R. 94, PageID#2012-2013.

Now sprinkled in plaintiffs' standing argument related to its declaratory judgment action under Title IX, for the first time on appeal, are arguments that the School District's "alleged conduct violates the First Amendment, the Due Process Clause, and Article I, §7 of the Ohio Constitution." Plaintiffs' Brief, Doc. 18, PageID#50, see also PageID#51 where plaintiffs' write, "[a]gain, the Ohio Constitution forbids Bethel from continuing this policy.") The plaintiffs failed to plead any federally protected cause of action and the state constitutional issues are

not before this Court on appeal, as the District Court properly declined to exercise supplemental jurisdiction over them, ordering them dismissed without prejudice.

### 1. Plaintiffs' declaratory judgment action under Title IX is speculative as it fails the injury-in-fact requirement

All agree the School District administration applied Title IX to grant Anne accommodation, with plaintiffs' calling it bad advice.[5] Plaintiffs generally plead plaintiff students "are suffering dignity harms, emotional distress, and anxiety because they "avoid the restroom and hold their urine" to avoid possibly contacting a transgender student in the bathroom." Dismissal Order, R. 94, PageID#2012; Pltfs Standing Brief, R. 59, PageID#1299. Keep in mind, while all male and female plaintiff students allege these generalized harms, none are in high school and there are no transgender male students accessing the male communal restrooms.

After considering all arguments raised by the parties, the District Court holds:

> "[A] court [may] enter declaratory relief only '[i]n  a case of actual controversy[.]'" *Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 961 (6th Cir. 2009) (quoting 28 U.S.C. § 2201(a)). "The Declaratory Judgment Act 'does not alter these rules or otherwise enable federal courts to deliver "an expression of opinion" about the validity of laws.'" *Safety Specialty Ins. Co. v. Genessee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022) (quoting *Saginaw County v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020)). Therefore, to seek declaratory relief within Article III's limits, the party seeking relief must show "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *STAT Emergency*, 946 F.3d at 954

---

[5] The School District does not ignore that the American's with Disabilities' Act applied to Anne's request, based upon medical health needs, as well.

(quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007)). "The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." *Hollingsworth v. Perry*, 570 U.S. 693, 704, 133 S. Ct. 2652, 186 L. Ed. 2d 768 (2013) (quoting *Diamond v. Charles*, 476 U.S. 54, 62, 106 S. Ct. 1697, 90 L. Ed. 2d 48 (1986)). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*,    U.S.    , 141 S. Ct. 2190, 2208, 210 L. Ed. 2d 568 (2021).

Plaintiffs' broad assertion—that the School District's policy harmed them—does not give them standing to sue under Title IX. Consider first the injury-in-fact requirement. "[A]n injury must be 'concrete, particularized, and actual or imminent[.]'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 185 L. Ed. 2d 264 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149, 130 S. Ct. 2743, 177 L. Ed. 2d 461 (2010)). Plaintiffs believe that they have standing to challenge the policy because they have suffered dignity and emotional harms, particularly as to the Student Plaintiffs' fear of using the bathroom. Doc. No. 1 at PageID 14. But those harms stem from their religious aversion to encountering a transgender student in the bathroom, or their parents' alleged injury to their right to raise their children; these harms do not relate to Title IX, which serves to remedy discrimination on the basis of sex in the educational context. *Id.*; cf. *Murphy v. NCAA*,    U.S.    , 138 S. Ct. 1461, 1486, 200 L. Ed. 2d 854 (2018) (Thomas, J., concurring) ("Remedies operate with respect to specific parties, not on legal rules in the abstract." (internal quotation marks and citations omitted)).

Resisting this conclusion, Plaintiffs generalize their harm— arguing that since the School District is enforcing its allegedly incorrect understanding of Title IX, and since this is injuring them, they have shown enough to satisfy Article III's standing requirement. See Doc. No. 67 at PageID 1460, 1462-63. "But crossover standing does not exist." *Vonderhaar v. Village of Evendale*, 906 F.3d 397, 402 (6th Cir. 2018). Nor is there is "supplemental jurisdiction" for standing, as "a plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352, 126 S. Ct. 1854,

164 L. Ed. 2d 589 (2006) (citations omitted). The fact that Plaintiffs can "demonstrate[] harm from one [alleged] particular inadequacy" in the policy, such as its potential to chill their [*28] religious exercise, does not satisfy their burden to show a concrete, particularized Title IX injury. *Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); cf. *Blum v. Yaretsky*, 457 U.S. 991, 1001-02, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) (plaintiffs who had standing to challenge procedural inadequacy of their nursing homes' discharges or transfers to a lower level of care lacked standing to challenge those procedures as to discharges or transfers to higher levels of care).

Dismissal Opinion, R. 94, PageID#2013-15. The hollow nature of the plaintiffs' appeal is amplified by their decision to ignore the binding legal precedent fully and properly analyzed by the District Court on the backdrop of their deficient pleading allegations.

Plaintiff's reliance on *Kanuszewski v. Michigan HHS*, 927 F.3d 396, 407 (6th Cir.2019) demonstrates why plaintiffs here have failed to allege injury-in-fact to vest the District Court will jurisdiction. There, the very invasive procedure of drawing a person's blood occurred, to newborns, without parental consent, and the blood was tested for disease. This alleged practice, if violative of the Fourth Amendment or substantive due process clause, afforded child and parent plaintiffs there standing for damages only. *Id*. at 407-408. The Sixth Circuit dismissed plaintiffs' claims for injunctive and declaratory relief for lack of standing because the actual alleged practice of drawing the blood was not alleged to occur again. *Id*.[6] Here, the School

---

[6] The Court did rule standing existed for damages, injunctive and declaratory relief for ongoing injury-in-fact related to the transfer and storage of the blood samples.

District took no action towards plaintiffs, and plaintiffs have failed to allege a cognizable federal claim. For these reasons and the authority relied upon by the *Kanuszewski* Court, plaintiffs' lack standing to assert a declaratory judgment action under Title IX.

Plaintiff's reliance on *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 622 (6th Cir.2019) is helpful in that the Sixth Circuit reminds that "[e]motional harm standing alone is not a redressable Title IX injury." The School District deprived no plaintiff access to its educational opportunities or benefits. Student plaintiffs have always had access to communal restrooms and single occupancy restrooms. Student plaintiffs assert no private cause of action, nor could they, under Title IX.

Plaintiffs' arguments about access to sports for women, what "logic" applies to access to restrooms "for millennia," and what should or should not be considered "prudishness," is of no legal consequence to the District Court's sound legal underpinnings. Plaintiffs' Brief, Doc. 18, PageID# 43-45. While Plaintiffs are not entitled to argue the substance of Title IX here, they do acknowledge this Court's *per curium* opinion, *Dodds v. United States Dept. of Edn.*, 845 F.3d 217 (6th

---

*Kanuszewski* at 409-412. Because plaintiffs fail to allege injury-in-fact to support a federal claim, the *Kanuszewski* analysis supports the District Court's holding denying plaintiffs standing for the declaratory judgment action.

Cir.2016).  Plaintiffs' Brief, Doc. 18, PageID#45.  *Dodds* need not be re-decided to address the issues on appeal now, either.

### 2.  Plaintiffs' declaratory judgment action under Title IX is incapable of redress and unripe

The District Court exhaustively analyzed the plaintiffs' declaratory judgment action under Title IX, in response to the parties' arguments below, and held:

> Redressability is another part of the standing requirement that Plaintiffs do not plausibly allege. "To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*,    U.S.   , 141 S. Ct. 2104, 2115, 210 L. Ed. 2d 230 (2021) (internal quotation marks and citation omitted). "The relevant standard is likelihood—whether it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 715 (6th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 181, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)). Considering this standard, Plaintiffs' request for declaratory relief is both speculative and a mismatch for the harms they allege. If the Court found that the School District misinterpreted Title IX when it created its policy, an order stating as much would have no bearing on whether the School District keeps its policy. As Defendants have intimated here, the School District could decide to afford transgender students *more rights* than Title IX provides—making any decision on whether the policy comports with Title IX superfluous, and of no real legal effect. *See* Doc. Nos. 18-1 to 18-5 (affidavits from School Board members indicating that they would have responded to Anne's request for an accommodation to use the girls' bathroom irrespective of the policy); *see also, e.g., MedImmune*, 549 U.S. at 127 n.7("[A] litigant may not use a declaratory-judgment action to obtain piecemeal adjudication of defenses that *would not finally and conclusively* resolve the underlying controversy." (emphasis in original)); *Arizona v. Biden*, 40 F.4th 375, 385-87 (6th Cir. 2022) (state lacked standing to sue where they could not show that rescinding the government's immigration enforcement priority memorandum would necessarily reduce crimes by third parties or prevent future law

enforcement expenditures). Thus, Plaintiffs lack standing to challenge the policy as an allegedly flawed interpretation of Title IX.

Relatedly, Plaintiffs' alternative theory of standing—based on the potential that Anne would sue if she were excluded from the girls' bathroom—embraces the hypothetical. To be concrete, an injury must be imminent, not speculative. *See Clapper*, 568 U.S. at 409. Plaintiffs, in the alternative, [*30] assert in their reply brief that this Court should preemptively declare the current policy an incorrect interpretation of the law just in case Anne sues under Title IX if the policy is struck down. Doc. No. 67 at PageID 1461. But that would require: (1) this Court to strike down the policy; (2) Anne to then file suit; and (3) the School District to then defend its actions by invoking Title IX. That theory requires several intervening events, some of which may never occur, to occur. This is fatal to Plaintiffs' burden to show they have standing. *See, e.g., City of Los Angeles v. Lyons*, 461 U.S. 95, 108, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1995) (holding that plaintiff could not sue Los Angeles Police Department to prevent officers from using a certain choke-hold because, even though officers previously used the choke-hold against the plaintiff, it was too speculative that they would do it again); *ACLU v. NSA*, 493 F.3d 644, 653-57 (6th Cir. 2007) (plaintiffs lacked standing to sue the NSA for possibility that illegal surveillance would discover information that could be used against them and relied on the plaintiffs' decision to voluntarily refrain from communications that may be tracked).

To bolster that point, Plaintiffs note that Anne "threatened to file a Title IX complaint" and she "specifically intervened in this [*31] case to protect that result." Doc. No. 67 at PageID 1462. Still, they misread the filings submitted. True, a "genuine threat of enforcement" of an illegal policy can satisfy Article III. *MedImmune, Inc.*, 549 U.S. at 129 (collecting cases). However, the Court disagrees with Plaintiffs' interpretation that this is threatened enforcement, given that Anne's mother couched her suggestion in very hypothetical, ambiguous language. *See* Doc. No. 54-1 at PageID 1166 ("*I've recently been made aware* that I *can* file a complaint with . . . the U.S. Department of Justice . . . ."). Instead, the record is analogous with cases in which courts have rejected theories of standing based upon hypotheticals. *See Clapper*, 568 U.S. at 411-12; *STAT Emergency Med. Servs., Inc.*, 946 F.3d at 958-60.[4]

Dismissal Order, R. 94, PageID#2015-17.

The District Court also points out any perceived Title IX challenge by Anne is unripe, based upon a proper application of the record and this binding decisional law: *Trump v. New York*, U.S. , 141 S. Ct. 530, 535, 208 L. Ed. 2d 365 (2020) (*per curiam*) (quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S. Ct. 1257, 140 L. Ed. 2d 406 (1998)); *Safety Specialty Ins. Co.*, 53 F.4th at 1020 (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997)); *See, e.g., D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019) (parents' alleged injury—that they would be prosecuted for truancy if they removed their son from a state-approved school, and if they enrolled him in a different school—presented an unripe claim); *cf. Kiser v. Reitz*, 765 F.3d 601, 608-10 (6th Cir. 2014) (dentist's challenge to advertising regulations was ripe where he demonstrated standing to sue, alleged past threats to enforce regulations against similar actors, and presented proof that the government warned him to stop advertising). Dismissal Order, R. 94, PageID#2017.

Plaintiffs' citation to *Binno v. ABA*, 826 F.3d 338 (6th Cir.2016) (Plaintiffs' Brief, Doc. 18, PageID# 47, 50 to suggest "[w]ere Bethel to abandon its policy, each of the above harms would vanish," ignores *Binno's* holding where a blind student unable to secure admission to law school sued the American Bar Association for its position on requiring the law school admission test. The Sixth Circuit wrote, in

34

holding the blind student failed to establish standing to assert his claims under Article III:

> The third prong of an Article III standing analysis considers whether it is likely that the plaintiff's injury will be redressed by a favorable decision. *Lujan*, 504 U.S. 555 at 560. Binno fails to establish redressability for many of the same reasons that he cannot demonstrate causation. Even if we were to grant Binno's requested relief by somehow making Standard 503 optional, law schools still could choose to require the LSAT in their admissions process. Because Binno's relief depends on action by the law schools—third parties that are not before the court—a favorable decision by this court is not likely to redress Binno's injury. *See id.*

*Binno*, 826 F.3d at 345. While the School District is before this Court as a party, as the District Court analyzed, nothing prevents it from "afford[ing] transgender students *more rights* than Title IX provides." Dismissal Opinion, R. 94, PageID#2015. Plaintiffs' claim that the "Ohio Constitution forbids Bethel from continuing its policy," an issue not on appeal and one that the School District disputes, can be litigated in state court should plaintiffs so choose. Plaintiffs' Brief, Doc. 18, PageID#51.

### 3. Plaintiffs' declaratory judgment action under Title IX seeks an advisory opinion

The District Court agrees with defendants that plaintiffs seek nothing more than an impermissible advisory opinion. To their credit, plaintiffs do not argue that federal courts are empowered to issue advisory opinions. The District Court's holding should be affirmed:

To that end, Plaintiffs, in essence, seek an advisory opinion. "Article III prohibits federal courts from issuing opinions that do not resolve 'actual controversies' or bring about change for the parties." *Flight Options, LLC v. Int'l Brotherhood of Teamsters*, 873 F.3d 540, 546 (6th Cir. 2017)(quoting *Muskrat v. United States*, 219 U.S. 346, 361, 31 S. Ct. 250, 55 L. Ed. 246, 46 Ct. Cl. 656 (1911)) (citing *Chi. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113-14, 68 S. Ct. 431, 92 L. Ed. 568 (1948)). In this case, Plaintiffs seek a preemptive judgment regarding a possible defense that would only apply if they won; only if Anne is forbidden from using the girls' communal bathroom; and only if she then sued the School District. Thus, their Title IX declaratory judgment request "is but a request for an advisory opinion as to the validity of a defense to a suit" not before the Court. *Coffman v. Breeze Corp.*, 323 U.S. 316, 323-24, 65 S. Ct. 298, 89 L. Ed. 264, 1945 Dec. Comm'r Pat. 576 (1945) (patent owner sought an advisory opinion when he sued to enjoin his licensee from paying the Government accrued [*33] royalties under the Royalty Adjustment Act of 1942, and attacked the Act's constitutionality, but the licensee did not seek to recover royalties); *see also Calderon v. Ashmus*, 523 U.S. 740, 742, 118 S. Ct. 1694, 140 L. Ed. 2d 970 (1998).

4. **Argument seeking interpretation of Title IX is improper on appeal because the District Court lacked subject-matter jurisdiction to address it**

Plaintiffs' undeveloped argument that accommodation of Anne's request violates Title IX is waived in the District Court. *See* Plaintiffs' Brief, Doc. 18, PageID#34, 45-46. The District Court refused to guess at plaintiffs' new suggestion made for the first time in its oppositional briefing in reference to Title IX or maybe the now abandoned federal or state Equal Protection Clauses. Dismissal Opinion, R. 94, PageID#2018, fn 5. The plaintiffs first time discussion of the substance of Title IX in support of their Free Exercise argument must be ignored for the same

reasons. *See* Plaintiffs' Brief, Doc. 18, PageID#34. While the plaintiffs use a kitchen sink approach, attempting to backdoor a substantive Title IX argument on appeal, they ultimately stipulate "[h]ere, the question is not whether the plaintiffs are right about the meaning of Title IX." Plaintiffs' Brief, Doc. 18, PageID#46.

Separately, the plaintiffs' argument surrounding its request for a declaratory judgment – an advisory opinion applying Title IX – must be limited to the jurisdictional challenge. Once the District Court is divested of jurisdiction for lack of standing, it must stop its review because plaintiffs' "request is speculative, incapable of redress, and seeks an advisory opinion." Dismissal Opinion, R. 94, PageID#2018. This prohibition equally applies to plaintiffs' amicus curiae, who are procedurally barred from addressing issues beyond this Court's review and possess only a conditional right to file a brief under FRCP 29. *United States v. Michigan*, 940 F.2d 143, 165 (6th Cir.1991).

*Amicus Curiae* for the State of Tennessee and the Commonwealth of Kentucky ask this Court to turn a blind eye to Article III standing issue on appeal when deciding to offer substantive Title IX argument. The District Court properly refused to substantively analyze Title IX because it was not vested with subject-matter jurisdiction to issue the requested advisory opinion. Tennessee and Kentucky *Amicus Curiae* acknowledge this is wrong when writing, "[i]f this Court needs to address Title IX's meaning," TN-KY Amicus Brief, Doc. 23, PageID#2424) and

"[i]f the meaning of Title IX bears on the outcome…" *Id., PageID#25*. The brief serves no meaningful function at this juncture of the proceedings.

**D.** **Count III (Fourteenth Amendment): The District Court properly dismissed the Parent Plaintiffs' Fourteenth Amendment claim because, their allegations, accepted as true and plausibly construed in their favor, do not invoke a right to dictate the School District's operation under the bathroom policy and do not invoke a right to concerning the demands to respond to questions about the bathroom policy and teaching of LGBTQ+ topics**

The parent plaintiffs, under *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), assert a Fourteenth Amendment right to make care, custody and control decisions for their children and allege the School District's bathroom policy violates their right to shield their children from same-sex students in the bathroom; allege the School District must answer all of their questions regarding the bathroom policy; and allege non-academic instruction on LGBTQ+ further violate their right, as well as not answering all their questions on the topic. While the District Court ruled standing existed to assert the Fourteenth Amendment claim, only those religious parent plaintiffs claim demonstrates an indirect burden on their religious value requiring them to raise their children apart from transgender individuals. Dismissal Opinion, R.94, PageID#2019. The School District's curriculum and bathroom policy do not even indirectly burden the parent plaintiffs. *Id.*

While the asserted constitutional right exists, decisional law makes clear state actors, like the School District, remain vested with "broad power to 'limit parental[] freedom'" in many ways. *L.W.*, 2023 WL 4410576, at *4 (alteration in original) (quoting *Prince*, 321 U.S. 158 at 167). Dismissal Opinion, R.94, PageID#2020. The District Court correctly observes that ""while this right plainly extends to the public school setting, it is not an unqualified right." *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395 (6th Cir. 2005) (citing *Runyon v. McCrary*, 427 U.S. 160, 177 (1976)); see also *L.W. ex rel.Williams v. Skrmetti*,--- F.4th ---, No. 23-5600, 2023 WL 4410576, at *4 (6th Cir. July 8, 2023) ("But the Supreme Court cases recognizing this right confine it to narrow fields, such as education, *Meyer v. Nebraska*, 262 U.S. 390 (1923), and visitation rights, *Troxel*, 530 U.S. at 57."). Dismissal Opinion, R.94, PageID#2019.

Decisional law has formed the contours of the substantive protections existing under the Due Process Clause of the Fourteenth Amendment and make clear here that parent plaintiffs allege no right here as it concerns the School District's operation under the bathroom policy and as it concerns the demands to respond to questions about the bathroom policy and teaching of LGBTQ+ topics. The District Court relied upon a dearth of mandatory authority and correctly applied it to the complaint allegations, such as *Blau v. Fort Thomas Public School District,* 401 F.3d

at 395–96 (emphasis in original) (collecting cases) (quoting *Goss v. Lopez*, 419 U.S. 565, 578 (1975)):

> While parents may have a fundamental right to decide whether to send their child to a public school, they do not have a fundamental right generally to direct how a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities."

While a parent controls the school the student attends, parents do not control school operations. *Yoder*, 406 U.S. 205 at 236; *Meyer*, 262 U.S. 390 at 402; *Pierce v. Soc. Of Sisters,* 268 U.S. 510, at 534; cf. *Crowley v. McKinney*, 400 F.3d 965, 971 (7th Cir. 2005) (noting that the constitutional parenting right "is not a right to participate in the school's management—a right inconsistent with preserving the autonomy of educational institutions, which is itself . . . an interest of constitutional dignity").

Dismissal Opinion, R.94, PageID#2021-22.

The District Court points out the First, Second, Seventh and Ninth Circuits do not vest parents with a constitutional right to dictate school operations, but rather limit a parent's right to where the student attends school. *Parker v. Hurley*, 514 F.3d 87, 102 (1st Cir. 2008); *Skoros v. City of New York*, 437 F.3d 1, 41 (2d Cir. 2006); *Leebaert v. Harrington*, 332 F.3d 134, 141-42 (2d Cir.2003); *Thomas v. Evansville-Vanderburgh Sch. Corp.*, 258 F. App'x 50, 53–54 (7th Cir. 2007) (order); *Parents for Privacy v. Barr*, 949 F.3d 1210, 1231 (9th Cir. 2020) ("[P]arents . . . lack

constitutionally protected rights to direct school administration . . . generally."
(citing *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1206 (9th Cir. 2005), *aff'd and amended in part on denial of reh'g en banc*, 447 F.3d 1187 (9th Cir. 2006))), *cert. denied*, 141 S. Ct. 894 (2020).  Dismissal Opinion, R.94, PageID#2021-22.

The historical commentary parent plaintiffs present (Plaintiffs' Brief, R.18, PageID#56-51) does not call into question the mandatory and persuasive law relied upon and correctly applied by the District Court to dispose of the Fourteenth Amendment claim.  The state law constitutional argument must be ignored at this stage, as the District Court properly declined jurisdiction to consider it.

As for the parent plaintiffs' assertion they are entitled to have questions answered about policy and are entitled to question and control alleged curriculum, the District Court properly disposed of them, again, with mandatory and persuasive law relied upon by the Circuit, including *Runyon*, 427 U.S. at 177, *Blau*, 401 F.3d at 395–96; *Parents for Privacy v. Barr*, 949 F.3d at 1229–32; *Fields*, 949 F.3d at 1206; *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 184 (3d Cir. 2005); *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 530 (1st Cir. 1995), abrogated in part on other grounds by *DePoutot v. Raffaelly*, 424 F.3d 112, 118 n.4 (1st Cir. 2005); *Swanson v. Guthrie Indep. Sch. Dist.*, 135 F.3d 694, 699 (10th Cir. 1998) (collecting cases).

Parent plaintiffs' moral upbringing argument (Plaintiffs' Brief, R.18, PageID#64) is also properly rejected by the District Court:

> Parents have a right to make the initial choice about where their child attends school. See *Pierce*, 268 U.S. 510 at 534. But inventing a constitutional right to strike down a state school's choices about curriculum and school operations would impermissibly extend that right and, in our pluralistic society, require State schools to cater to inconsistent obligations from parents who may have different moral objections about how a school operates. See *Parents*, 949 F.3d at 1233; *Crowley*, 400 F.3d at 969; *Brown*, 68 F.3d at 534. The substantive protections in the Due Process Clause do not extend so far. See *Students & Parents for Privacy*, 377 F. Supp. 3d 891 at 903–04 (rejecting substantive due process challenge to transgender bathroom policy).

Dismissal Opinion, R.94, PageID#2025. A parent's upbringing of a child is a different concept from a school district setting policy, enforcing policy, and teaching its state mandated curriculum. Likewise, a parent's right to raise his or her child is not deprived when a school district refuses to answer the parent's question. The parent always remains free to send his or her child to a different school. See Dismissal Opinion, R. 94, PageID2025.

As for *Amica Curiae* Tammy Fournier, while her state court ruling has no legal impact on this Circuit, and the fact pattern of her case is distinguishable from the three counts on appeal here, the story she tells helpful in that she acted for her child. She removed her child from school and found a better school. *Amica Curiae* Tammy Fournier Brief, Doc.25, PageID#9. The concerns raised about schools hiding and concealing information from parents about their children is not plead in

the plaintiffs' complaint and not at issue in this appeal. Because this case does not involve parental exclusion policies, and the School District never compelled any plaintiff do any act, the arguments do not impact the outcome of this proceeding.

## CONCLUSION

The Court should affirm the District Court's judgment dismissing the plaintiffs' complaint because it "does not pass legal muster under the applicable methods of constitutional, statutory, or precedential interpretation." Dismissal Order, R.94 PageID#2048. Dismissal with prejudice is separately appropriate for former board members sued in their official capacity only under Count II, the declaratory judgment action, Lydda Mansfield, Lori Sebastian, Danny Elam and Jacob King.

| | |
|---|---|
| Lynnette Dinkler (0065455) | John A. Podgurski (0020923) |
| *Counsel of Record* | JP@johnpodgurski.com |
| lynnette@dinkler-law.com | Law Offices of John A. Podgurski |
| DINKLER LAW OFFICE, LLC | 9155 Chillicothe Road |
| 174 Lookout Drive | Kirtland, OH 44094 |
| Dayton, OH 45419-3811 | (440) 256-2990 |
| (937) 426-4200 | |
| (866) 831-0904 (fax) | |

*Counsel for Defendants-Appellees*

Dated: May 15, 2024          By:     /s/ Lynnette Dinkler
                                                  Lynnette Dinkler

*Counsel for Defendants-Appellees*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g) I, Lynnette Dinkler, certify that this document complies with the word limit of Fed R. App. P. 29(a)(5) because it contains 11,262 words, excluding elements exempted by Fed. R. App. P.32(f) and 6th Cir. R. 32(b)(1). Additionally, I certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in 14-point Times New Roman font using Microsoft Word.

Dated: May 15, 2024          By:   /s/ Lynnette Dinkler
                                    Lynnette Dinkler

                                    *Counsel for Defendants-Appellees*

**CERTIFCATE OF SERVICE**

I, Lynnette Dinkler, hereby certify that on this 15th day of May, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Sixth Circuit via the ECF system, which will send notification of such filing to all counsel of record.

Dated: May 15, 2024     By:   /s/ Lynnette Dinkler
                                    Lynnette Dinkler

                                    *Counsel for Defendants-Appellees*

| RE # | Description of Pleading, Transcript or Other Filing | PAGE ID# |
|---|---|---|
| NA | U.S. District Court Docket – Case #: 3:22-cv-00337 | |
| 1 | Complaint for Injunctive Relief, Declaratory Relief, and Damages – Preliminary Injunction Sought – Jury Trial Demanded | 1-36 |
| 5 | Plaintiffs' Motion for Preliminary Injunction Against Defendants | 51-64 |
| 13-1 | Declaration of Anne Roe (Anne Roe's Motion to Intervene as Defendant, and Motion for Leave to File *Instanter* Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction – Doc. 13, PageID#100-153) | 120-129 |
| 13-1 | Declaration of Joanne Roe (Anne Roe's Motion to Intervene as Defendant, and Motion for Leave to File *Instanter* Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction – Doc. 13, PageID#100-153) | 131-136 |
| 16-2 | Board Policies (Notice of Filing Certificate of Bethel Local Schools Board of Education Treasurer / CFO, Tina K. Hageman, in Support of Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction Against Defendants (Doc. 16; PageID# 179-180) | 201-246 |
| 18-1 | Declaration of Danny Elam to Notice of Filing Declarations in Support of Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction Against Defendants (Doc 18, PageID# 628-629) | 630-631 |
| 18-2 | Declaration of Jacob King to Notice of Filing Declarations in Support of Defendants' Memorandum in Opposition to | 632-634 |

| RE # | Description of Pleading, Transcript or Other Filing | PAGE ID# |
|---|---|---|
| | Plaintiffs' Motion for Preliminary Injunction Against Defendants (Doc 18, Page ID# 628-629) | |
| 18-3 | Declaration of Lydda Mansfield to Notice of Filing Declarations in Support of Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction Against Defendants (Doc 18, PageID# 628-629) | 635-638 |
| 18-4 | Declaration of Lori Sebastian to Notice of Filing Declarations in Support of Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction Against Defendants (Doc 18; PageID# 628-629) | 639-640 |
| 18-5 | Declaration of Matthew Chrispin to Notice of Filing Declarations in Support of Defendants' Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction Against Defendants (Doc 18, PageID# 628-629) | 641-643 |
| 24 | See Addendum 2 filed under seal | |
| 48-1 | Declaration of Justin Firks (to Defendants' Motion in Limine, to Strike and to Remove Froom Docket by Placing Under Seal Former Board of Education Member Jessica Franz's Declaration (Doc. 37-3, PageID# 814-817) (Doc 48; PageID# 1041-1097) | 1052-1053 |
| 59 | Plaintiff's Brief on Standing for Federal Claims | 1296-1312 |
| 79 | Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion for Judgment on the Pleadings for Defendants Bethel Local School District Board of Education, and Lydda Mansfield, Lori Sebastian, Natalie Donahue, Danny Elam, Jacob King and Matthew Chrispin in their official capacities | 1651-1666 |
| 94 | Order: (1) Granting Defendants' and Intervenor-Defendant's Motions to Dismiss and for Judgment on the Pleadings (Doc. Nos. 75, 79); (2) Dismissing Counts II and | 1998-2049 |

| RE # | Description of Pleading, Transcript or Other Filing | PAGE ID# |
|------|------------------------------------------------------|----------|
|      | IV for Lack of Standing; (3) Dismissing Counts III, V, and VI for failure to state a claim; (4) Declining to exercise supplemental jurisdiction over the remaining State-Law claims; and (5) Denying as moot Plaintiffs' Motion for a Preliminary Injunction, Defendants' Motion *in Limine*, and Interventor-Defendant's Motion to Withdraw (Doc. Nos. 5, 48, 93) | |